Argued April 6; affirmed May 9; rehearing denied July 5, 1933

# STATE *v.* KELLER

(21 P. (2d) 807)

*W. Franklin Ake* and *C. R. Stearns,* both of Portland, for appellant.

*Barnett H. Goldstein,* Assistant Attorney General and Deputy District Attorney (John H. Carson, District Attorney, of Salem, on the brief), for the State.

CAMPBELL, J. Defendant was tried and convicted for the violation of the Blue Sky Law and sentenced to a term in the state penitentiary. Defendant appeals.

Defendant and four others were indicted charged with a violation of § 25-1325, Oregon Code 1930. The indictment charges the defendant with unlawfully devising a scheme to defraud in the sale of securities and committing an overt act in furtherance thereof. It alleges in substance, that the defendants organized a corporation under the laws of Oregon and that they were the principal officers and directors of such corporation; that between October 1, 1930, and November 10, 1931, the defendants

"* * * in conjunction with other persons to the Grand Jurors unknown, did knowingly, wilfully, un-

lawfully and feloniously devise, and attempt to devise, a scheme and artifice to defraud various and divers persons, and the public generally, and in particular a certain class of persons, that is to say, those persons who by the means hereinafter described, were induced to and did subscribe for and purchase the securities hereinafter set forth, by securing subscriptions for and by promoting and negotiating the issuance, transfer, distribution and sale of certain securities, to wit: Shares of the capital stock of the Empire Holding Corporation, also known as the United States Holding Company, as aforesaid.

"That the aforesaid scheme and artifice to defraud, so devised and attempted to be devised by the above named defendants, in conjunction with others to the Grand Jurors unknown, as aforesaid, was in substance as follows, to wit: That the said defendants should cause to be organized and incorporated, and there was thereupon so organized and incorporated, a certain corporation to be known as the United States Holding Company, with the capital stock thereof to be, and which was, fixed at 50,000 shares of no par value, the name of which corporation was thereafter changed to that of the Empire Holding Corporation; that the control and management thereof should be, and was, acquired and exercised by the defendants, who were to be, and were, elected as the principal officers and directors thereof * * *; that the defendants should and did make application to the Corporation Commissioner of the State of Oregon for a permit to sell 25,000 shares of the common stock of said company at $100 per share; that in order to induce the granting of said permit and to further the scheme to defraud, by means of the false and fraudulent representations hereinafter described, to be made to prospective purchasers of corporate stock, the defendants, as the principal officers of said corporation, should and did falsely and fraudulently represent in said application for permit, that each of said defendants had actually paid $20,000 in money to the said company for the stock herein subscribed by each of them; that each of

said defendants should and did cause separate letters to be written to the company, calling attention to their separate stock subscriptions in the sum of $20,000, the purpose and object of such letters, as aforesaid, being to have the same printed and extensively published and circulated so that same, coupled with their written representations to the Corporation Commissioner, in their application for permit, as aforesaid, that they had each paid $20,000 in money for said stock, so subscribed by them, as hereinbefore alleged, would cause the prospective purchasers of stock in said company to believe that they, the said defendants, as the principal officers and directors of said company, had actually paid into the treasury of said company, the sum of $20,000 each, or in the aggregate, the sum of $100,000 in cash; that upon the granting of the permit to sell stock in said company, the said defendants, should and did, engage in an extensive stock selling campaign, to wit: to be and which was carried on by means of divers newspaper and magazine advertisements, divers printed pamphlets, prospectus, literature, and correspondence, and to be and which was further supplemented by the employment of numerous stock salesmen to be, and who were, sent to various parts of the State of Oregon, each of whom should be and was supplied with a bound book, known as a 'sales kit,' containing photographs of the defendants, together with other persons well known and prominent in public life, and who should be, and were, said to be associated with and interested in said company which book would also contain printed testimonials as to the honesty and business integrity of the defendants, among others the purpose and object thereof, as well as the purpose and object of the newspaper and magazine advertisements, pamphlets, prospectus, literature and correspondence as aforesaid, being to influence and induce the prospective purchasers of corporate stock to buy the stock of said company.

"That it was a further part and portion of said scheme and artifice to defraud so devised and attempted to be devised, as aforesaid, and in pursuance

thereto, and in furtherance thereof, that the defendants herein, after having by means of the newspaper and magazine advertisements, pamphlets, prospectus, literature and correspondence, so published and circulated as aforesaid, attempted to persuade the prospective purchasers of corporate stock of the high character, financial standing, and honesty of the principal officers and directors of said corporation, and after having thereby attempted to lull said prospective purchasers into a sense and feeling of safety and security, with respect to the value of the stock of said corporation, and aroused in them a belief as to the desirability of said stock should, and did, in order to finally consummate the sale of said stock, cause and authorize salesmen, agents, and employees to make certain oral, false and fraudulent representations to the prospective purchasers, as aforesaid, which were intended by them, the said defendants, their stock salesmen, agents, and employees, to be believed and relied upon by such persons so to be defrauded; the false and fraudulent representations being, among others, in substance as follows:

"(a) That the principal officers and directors of said company, to wit: the defendants herein, had each actually paid into the treasury of the company the sum of $20,000 in money, for their stock in said company.

"(b) That none of the principal officers and directors of said company, to wit: the defendants herein, were being paid any salaries whatsoever, and would not be paid any salaries, until and unless certain subsidiary companies, which were thereafter to be organized and incorporated, were actually in operation.

"(c) That all of the moneys so received and to be received from the sale of the capital stock would be and were being deposited with the insurance commissioner of the state of Oregon.

"That said representations so to be made, and, which were made, as aforesaid, were and at all times herein mentioned, well known by said defendants and

each of them, to be false, fraudulent, and untrue, in that they, the said defendants, then and there, and at all times, well knew, in truth and in fact;''

Then follows an allegation of the amount that each defendant paid in money on his subscription of $20,-000 and showing that the aggregate amount paid by all of the said defendants was less than $8,000.

''(b) That all of the principal officers and directors of said company, to wit: the defendants herein, were in truth and in fact being paid salaries, prior to the organization and incorporation of any subsidiary company, and prior to the actual operation of any such company, that in truth and in fact no subsidiary company was at any time organized, incorporated or operated; that in truth and in fact at about the same time that said United States Holding Company, later known as the Empire Holding Corporation, was organized and incorporated each of said defendants, as principal officers and directors of said company, secured for themselves contracts of employment for a period of ten years, binding said company to pay each of said defendants salaries ranging from $7,500 to $10,000 per annum, for the first and second years, with an increase in salary for the remainder of the term for said ten years; and that in truth and in fact such salaries were actually paid, and were being paid to said defendants, or credited to their stock subscriptions;
\* \* \*

''(c) That in truth and in fact no moneys received from the sale of said stock were deposited with the Insurance Commissioner of the state of Oregon, or with any department of the state of Oregon; or with any state official thereof, but on the contrary, all the moneys so received from the sale of said stock were being paid to and distributed among the stock salesmen, officers, and directors of said corporation, to wit: the defendants herein for their salaries, commissions and organization expenses.

''And the said defendants herein, having so knowingly, wilfully, unlawfully, and feloniously, devised and

attempted to devise, a scheme and artifice to defraud by the means, and in the manner, and under the circumstances herein set forth, various and divers persons and the public generally, as aforesaid, by securing subscriptions for and by promoting and negotiating the issuance, transfer and distribution and sale of certain securities, to wit: shares of the corporate stock of the Empire Holding Company, as aforesaid, did knowingly, unlawfully, wilfully, and feloniously commit the following overt act within the county of Marion, and state of Oregon, that is to say that they, the said defendants, by their stock salesmen, agents, and employees, with the intent and purpose on the part of the said defendants, to execute, and attempt to execute, the aforesaid scheme and the artifice to defraud, as aforesaid, and in pursuance thereto and in furtherance thereof, did, on, to wit: July 23, 1931, in the county of Marion, State of Oregon, as aforesaid, knowingly, unlawfully, wilfully and feloniously secure from one C. T. Brixey, of Gervais, Marion county, Oregon, a subscription for five (5) shares of the capital stock of said Empire Holding Corporation Company, for which the said C. T. Brixey paid to defendants and their stock salesmen, agents, and employees, for their use and benefit, the sum of $25.00 in cash, together with a promissory note made and executed by him, and payable to the Empire Holding Corporation, in the sum of $475, contrary to the statute in such cases made and provided, and against the peace and dignity of the state of Oregon. * * *''

This defendant, upon arraignment asked for and was granted a separate trial.

Defendant filed the following demurrer:

''Comes now, the above named defendant, Frank Keller, Jr., and demurs to the indictment on file herein upon the following grounds:

''1. That said indictment does not substantially conform to the requirements of chapter VII, of title XIII of the Oregon Code 1930, in the following respects and particulars; to wit:

"(a) It violates section 13-703 of the Oregon Code 1930, in that it does not state facts constituting an offense in ordinary and concise language without repetition and in such manner as to enable a person of common understanding to know what is intended.

"(b) It violates section 13-706, Oregon Code 1930, in that it is uncertain and indefinite as to the crime attempted to be charged.

"(c) It violates section 13-708, Oregon Code 1930, in that it charges more than one crime in one form only.

"(d) It violates generally chapter VII of title XIII of the Oregon Code 1930.

"2. That this defendant is charged with more than one crime in said indictment, to wit:

"(a) Violation of section 25-1325, Oregon Code 1930.

"(b) Violation of section 25-1326, Oregon Code 1930.

"(c) Violation of other laws of the state of Oregon".

This demurrer was overruled and an exception was saved.

When the state offered to introduce its testimony, defendant objected to the introduction of any testimony for the reason that the indictment does not state facts sufficient to constitute a crime. This objection was overruled and an exception was saved.

At the close of the evidence, defendant moved for a directed verdict for the reason that the indictment does not state facts sufficient to constitute a crime, which motion was overruled and an exception saved.

These three propositions raise but one question, does the indictment state facts sufficient to constitute a crime?

█ Those objections that are stated in the demurrer, and no mention made thereof in the brief, will be considered waived.

■ In the indictment we have an allegation of a scheme devised by defendants. Then a description of the scheme to defraud by the organization and control by defendants of the Empire Holding Corporation and to issue to themselves 1,000 shares of stock of the face value of $100,000 on a payment of less than $8,000, and of defendants entering into a contract for a term of 10 years with said Empire Holding Corporation and fixing each of defendants' salaries for said term and then to sell the balance of the capital stock thereof by the aid of false representations, to wit: That each of the defendants had paid for his 200 shares of stock subscribed, $20,000 in money; that defendants were not to receive any salaries until certain subsidiary companies were organized. An overt act is alleged; the actual sale by defendants through their salesmen of a part of the capital stock to C. T. Brixey. Thus the indictment alleges that the defendants did the things prohibited by statute.

■■ On a demurrer to an indictment, the question is not whether it could have been made more concise and exact, but whether the facts alleged constituting the crime are alleged in ''concise language without repetition and in such a manner as to enable person of common understanding to know what is intended''. Oregon Code 1930, § 13-703. It seems to us that the indictment complies with the foregoing requirement. It fully apprises the defendant of the charge he must meet. It alleges the acts which constitute an offense under the statute and charges the defendants with doing those acts. *State v. Carr.* 6 Or. 133; *State v. Ah Sam,* 14 Or. 347 (13 P. 303); *State v. Morris,* 83 Or. 429 (163 P. 567); *State v. Laundy,* 103 Or. 443 (204 P. 958, 206 P. 290); *State v. Dormitzer,* 123 Or. 165 (261

P. 426); *State v. Linville,* 127 Or. 565 (273 P. 338); *State v. Christy,* 131 Or. 314 (282 P. 105).

The statute under which the charge is made, reads as follows:

"Any person who shall, alone or in conjunction with others, devise, or attempt to devise, any scheme or artifice to defraud any person by securing subscriptions for, or by promoting or negotiating the issuance, transfer, distribution or sale of any security, and who shall, for the purpose of executing or attempting to execute such scheme or artifice, commit any overt act within this state, shall be guilty of a crime, * * *". Oregon Code 1930, § 25-1325.

█ Therefore, to constitute a crime under this section of the code, the necessary elements set up in the statute must be presented; first, a person alone, or in conjunction with others, must devise or attempt to devise a scheme to defraud by securing subscriptions or sales of securities; second, he must commit some overt act in carrying out or attempting to carry out such fraudulent scheme.

The indictment alleges that the defendants therein named, acting in conjunction with others, devised the scheme of organizing the Empire Holding Corporation and subscribed for a certain number of shares of the capital stock of said company, and had themselves elected directors and officers and then voted themselves certain salaries and entered into a contract with the corporation requiring it to pay those salaries for a period of ten years, and represented to prospective purchasers of the capital stock of said corporation, that the directors had paid the full price of $100 per share for their stock, and further represented that no salaries were to be drawn by the directors or officers

until the subsidiary companies were organized and in operation. This would amount to a fraud on the subsequent purchasers of the stock.

"The overt act must reach far enough towards the accomplishment toward the desired result, to amount to the commencement of the consummation of the offense attempted to be perpetrated, * * * ''. State v. Roby, 194 Iowa 1032 (188 N. W. 709). For other definitions of "overt act" see 5 Words & Phrases, 3d Series, 768.

■. The overt act alleged in the indictment is the selling of the stock to C. T. Brixey. The indictment charges that defendants through their salesmen made the sale. This connects the act with defendants. It is sufficient that defendant employed a salesman to commit the act. It is not necessary that defendant made the sale in person, if the fact be that he was the active agent in consummating the transaction by direct control of the salesmen.

■. We agree with counsel for defendant that the statute upon which the indictment is laid is not, strictly speaking, a conspiracy statute. It, however, is a statute covering acts done by persons working in conjunction to attain a common end. When it is established that persons are associated together to obtain a common objective, then the act of one towards that end is the act of all. When such a conjunction of persons is established by evidence, then the admissions or declarations of one are binding on the others. It is not the name by which such a combination is known that matters, but whether such persons are working together to accomplish a common result. If they are, and are doing the acts prohibited by § 25-1325, supra, and the evidence establishes that fact beyond a reasonable doubt to the satisfaction of a jury, the defendants, or one or more

of them may be found guilty. *State v. Moore,* 32 Or. 65 (48 P. 468); *State v. Tucker,* 36 Or. 291 (61 P. 894, 51 A. L. R. 246); *State v. Boloff,* 138 Or. 568 (4 P. (2d) 326, 7 P. (2d) 775).

■ ■ The defendant challenges the indictment on the grounds of duplicity, claiming that it also covers the criminal elements defined in § 25-1326, Oregon Code 1930, and is therefore bad because it charges two crimes.

"Any person with intent to induce the purchase of any of the securities herein mentioned who shall, by the use of any writing or token, or note or memorandum thereof, knowingly or recklessly, with intent to deceive or defraud, make any false statement, or knowingly or recklessly, with intent to deceive or defraud, conceal any facts materially affecting the value of any such securities, shall be guilty of a crime  *  *  *". Oregon Code 1930, § 25-1326.

A reading of § 25-1325 and § 25-1326, supra, shows the fallacy of this contention. The first covers devising a scheme and committing an overt act in furtherance thereof. The second defines the crime of inducing the purchase of securities by a false token or false representation, or by the intentional or reckless concealment of facts materially affecting the value of securities sold. While both these crimes have some common elements, yet they are separate and distinct offenses.

■ ■ The defendant assigns as error the introduction in evidence of the application for a permit to sell the stock of the Empire Holding Corporation, which introduction was made over defendant's objection. This error is based on the assumption that the application for a permit to sell stock is not a public record.

"The corporation commissioner shall keep as records of his office books showing all acts, matters and

things done by him under the provisions of this act. * * * The records of the corporation department shall be public records, and information shall be furnished any one affected by the corporation laws, upon application therefor, except that the corporation commissioner may, in his discretion, withhold information relating to the private affairs of solvent corporations when in his judgment the same shall not be required for the public welfare". Oregon Code 1930, § 25-1323.

There is no evidence showing or tending to show that the corporation commissioner ever deemed it necessary to withhold the information in the application for the said permit from the public. The discretion with which the corporation commissioner is vested is not to be exercised arbitrarily. The public must always have access to all public records required to be kept or made by a public official unless the statute specially provides otherwise.

The defendant assigns as error the refusal of the court to grant a motion for a mistrial.

Counsel for the state, in the cross-examination of F. M. Rummel, a witness called by defendant and who was one of the salesmen employed by defendant, developed the fact that the witness, during the year of 1909 was engaged in selling stock in a corporation of which a man by the name of Wilson was president. Counsel then asked the witness (referring to said Wilson):

"He is the man that was convicted for using the mails to defraud?"

This question was objected to by counsel for defendant and the objection was sustained. Counsel for defendant thereupon moved the court for a mistrial, on the ground that the asking of that question consti-

tuted misconduct on the part of counsel for the state amounting to prejudicial error. The motion was overruled and the jury instructed to disregard the question.

It is difficult to perceive how the asking of the question would be prejudicial error, especially in view of the fact that the court did not permit the question to be answered and instructed the jury to disregard it. The question was not asked regarding defendant or the witness. *State v. Evans,* 109 Or. 503 (221 P. 822); *State v. Pointer,* 106 Or. 589 (213 P. 621).

■ Defendant assigns as error, the ruling of the court in permitting the introduction in evidence the acts and statements of other defendants and salesmen in the employ of the Empire Holding Corporation.

Defendant does not point out in his brief what particular acts or statements, made by his co-defendants or the salesmen, that he objects to. Suffice it to say that when the state produced evidence showing that defendants were acting in conjunction to accomplish an unlawful purpose, then the acts or statements of any member of the combination would be binding on all. This is true whether you call the combination a conspiracy, an unlawful partnership or a joint enterprise for criminal purposes. Oregon Code 1930, § 9-226, subd. 5 and 6, § 13-724, § 14-1002; *State ex rel. Kruckman v. Rogers,* 124 Or. 656 (265 P. 784).

There are some other matters that defendant assigns as error but we do not deem them material.

Finding no prejudicial error, the judgment of the circuit court will be affirmed.

It is so ordered.

BEAN and BAILEY, JJ., concur.

RAND, C. J., did not participate in this opinion.