Argued September 14, reversed October 12, petition for rehearing
denied November 9, opinion and judgment clarified
November 30, 1960

# STATE OF OREGON *v.* PARKER

356 P. 2d 88

*William J. Sundstrom* and *Douglas J. White, Jr.,* Portland, argued the cause and filed briefs for appellant.

*Oscar D. Howlett,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was Charles E. Raymond, District Attorney, Portland.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

SLOAN, J.

A jury found defendant guilty of second degree murder. He appeals from the judgment of life imprisonment which followed. The crucial assignment of error results from the testimony of witnesses who were permitted to relate statements made to them by an alleged conspirator. The statements were not made in the presence of defendant. The admissibility of that testimony is the decisive question in the case.

The person who was killed had been one Robert Holloway. He was last seen alive when he left a tavern in Portland at about 1:30 a. m. on October 27, 1957. Holloway was then accompanied by defendant and the alleged conspirator, Harold Keith.

Holloway's disappearance became known to the Portland police. By dint of what appears to have been painstaking investigation, the police gained information that the body of Holloway was to be found in an old well on an abandoned tract of land near Vernonia. The well was near the place where Harold Keith lived.

Holloway's body was found in the well. Lime was also found in the well. The body was dressed in the

same clothing Holloway was wearing when he left the tavern with defendant and Keith. Death was described as caused by a blow on the head.

The particular testimony which we think requires a reversal of this case came from one Nora Keith. She occupied the status of wife to Harold Keith. She testified that near dawn on the morning of October 27, 1957, defendant and Harold Keith came to the Keith home; that Harold Keith came into her room and told her, not in the presence of defendant, that: "* * * Lee Parker just killed Bob Holloway." She also quoted Keith as saying at the same time that Parker had knocked Holloway down and hit Holloway's head on the sidewalk.

This testimony of Nora Keith, just mentioned, affords the principal explanation contained in the entire record of the cause and nature of Holloway's death.

Other witnesses were permitted to testify to somewhat similar statements claimed to have been made by Keith. However, the testimony of Nora Keith just quoted could be presumed to be the most damaging. It was first blurted out by the witness before any attempt had been made to show a conspiracy. The same witness was later permitted to relate other activities of defendant and Keith. Nora Keith's testimony, together with that of other witnesses, would be sufficient to show a conspiracy or agreement on the part of Keith to help conceal or obliterate the body of Holloway in the well. But there is no word of evidence of an agreement or a conspiracy to kill.

The only evidence which connected Keith with defendant at a time prior to the alleged killing was given by one witness who testified that she saw the three men, Keith, defendant and Holloway, leave the tavern together. She did not know how long they

had been in the tavern, she had not talked with them and, obviously, had no reason to suspect foul play from the nature of the departure; otherwise, it could be inferred that she would have given some outcry or expressed alarm. The witness was a roommate of the deceased Holloway. Nor is there any evidence which reflected illwill upon the part of Keith towards Holloway. For all we know, the men left the tavern in a friendly mood. At least there is a positive lack of any showing that Keith had any purpose or intent to participate in any harm to the deceased Holloway.

The testimony of Nora Keith, quoted above, and that of other witnesses may show that Keith witnessed an altercation between defendant and Holloway, but that testimony gives not even a hint that Keith had any predetermined intent, idea, thought or notion that Holloway was destined to meet foul play when the three men left the tavern together. Certainly, there was no indication that Keith planned to be a participant.

The evidence was admitted on the theory that prima facie evidence of a conspiracy had been presented. ORS 41.900 provides:

> "Facts which may be proved, generally. Evidence may be given of the following facts:
>
> "\* \* \* \* \*
>
> "(6) After proof of a conspiracy, the declaration or act of a conspirator against his coconspirator, and relating to the conspiracy.
>
> "\* \* \* \* \*"

■ The testimony given would only have been admissible if there had been prima facie evidence of a meeting of the minds between Keith and defendant to do away with Holloway. *State v. Reynolds,* 1934, 160 Or 445, 472, 86 P2d 413; *State v. Lewis,* 1908, 51 Or

467, 94 P 831; *State v. Ryan,* 1905, 47 Or 338, 82 P 703, 1 LRA(ns) 862; 3 Underhill, Criminal Evidence, (5th ed, 1957) § 855, p 1942; 2 Wharton, Criminal Evidence, (12th ed, 1955) ch 8, p 178, et seq.

■ It is recognized that the courts have been most liberal in permitting very slight evidence to be sufficient to permit a jury to find a conspiracy. See, Arens, Conspiracy Revisited, 1954, 3 Buffalo L Rev 242, and, like other fields of the law, definition has been elusive and conflicting. Sayre, Criminal Conspiracy, 1922, 35 Harv L R 393. However, at p 250 of the cited article Professor Arens states: "The requirement has never been officially repudiated that the agreement, underlying an actionable conspiracy, be characterized by a *specific intent* 'either to do an unlawful act, or a lawful act by unlawful means.'" See also, Clark and Marshall, Crimes, (6th ed, 1958) § 9.00, p 489, et seq.; Note, Criminal Conspiracy, Specific Intent as an Element of the Crime, 1925, 38 Harv L R 96.

No intent on the part of Keith could be discovered in this record. And there must be some evidence to show that "the minds of the parties met understandingly." There was no evidence here of any kind of an understanding to kill Holloway.

We must, and do, hold that in this case it was error to admit the testimony of Nora Keith and of the other witnesses who were permitted to relate statements made by Keith in the absence of defendant.

In fact, the state recognizes the insufficiency of the evidence of conspiracy. Its answer to this assignment of error is limited primarily to the argument that proper objection was not made. The state contends that defendant did not object to the evidence at the trial on the ground that the statements of Keith were not made in furtherance of the conspiracy; that

the only objection made was that there was insufficient evidence of a conspiracy. In oral argument before this court the state conceded that if what it termed a proper objection had been made, the evidence would not have been admissible.

■ The evidence should have been excluded on either ground. However, we think the experienced trial judge was fully apprised of defendant's objections. Several discussions were had in chambers during the course of the trial when the subject of conspiracy was under discussion. Unfortunately, some of the actual discussion between court and counsel was unreported. We do not know, therefore, the full extent to which defendant objected to the evidence and presented reasons to the court. It is clear, however, from the record reported that the trial judge was aware of the full requirements imposed by the law before such evidence would be admissible. The recorded objections were not as precise as could be, but the court was not misled. The trial court reached the erroneous conclusion that a conspiracy to kill had been established and that the acts testified to were in furtherance of that conspiracy.

The practice, just mentioned, of not reporting the consideration given to material matters affecting the outcome of a criminal case should not be permitted. Frequently, rulings made in chambers and the consideration thereof become most vital in deciding the rights of a convicted person.

Reversed.

94

Charles E. Raymond, District Attorney, and Oscar D. Howlett, Deputy District Attorney, Portland, for the motion.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

## PER CURIAM.

The opinion and judgment entered herein are clarified to order that this cause be remanded for a new trial. The mandate previously issued is recalled and a new mandate shall issue according to this judgment. It is so ordered.