Argued and submitted July 22, 1981; resubmitted In Banc
January 6, reversed and remanded for a new trial March 8,
former opinion (59 Or App 725, 652 P2d 372) withdrawn; affirmed
and remanded for resentencing October 20, reconsideration denied
December 10, 1982, petition for review allowed March 1, 1983 (294 Or 569)

STATE OF OREGON,
*Respondent,*

*v.*

CURTIS L. FARBER,
*Appellant.*

(No. 80-9-30, CA 19380)

642 P2d 668

J. Michael Alexander, Salem, argued the cause for appellant. With him on the brief was Brown, Burt, Swanson & Lathen, Salem.

Rudolph S. Westerband, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

VAN HOOMISSEN, J.

THORNTON, J., filed a dissenting opinion.

## VAN HOOMISSEN, J.

Defendant appeals his jury conviction for murder.[1] He contends the trial court erred (1) in admitting the hearsay statements of an alleged coconspirator and (2) in denying his motion for judgment of acquittal. The dispositive issue is whether the hearsay statements of the alleged coconspirator were so inherently prejudicial that they should not have been received in evidence, absent an opportunity to cross-examine the declarant.

The state's theory at trial was that defendant was selling cocaine supplied by the victim, Foss. Foss had supplied defendant with a large quantity of cocaine on credit. Defendant's drug sales were aborted when the cocaine and money were stolen from his car. Fearful of the potential repercussions from being unable to pay Foss, defendant hired the alleged coconspirator, Whitney, to kill Foss. Defendant stipulated that Whitney killed Foss[2] and

---

[1] ORS 163.115(1) provided in part:

"(1) Except as provided in ORS 163.118 and 163.125, criminal homicide constitutes murder when:

"(a) It is committed intentionally by a person who is not under the influence of an extreme emotional disturbance;

"* * * *"

Although defendant was charged in the language of a principal, the state's theory was that defendant was liable as an aider and abettor under ORS 161.155, having allegedly hired another to commit the murder. ORS 161.155 provides:

" A person is criminally liable for the conduct of another person constituting a crime if:

"* * * * *

"(2) With the intent to promote or facilitate the commission of the crime he:

"(a) Solicits or commands such other person to commit the crime; or

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime; or

"* * * * *."

[2] Defendant's lawyer explained that defendant did so to minimize the prejudice he thought might come from a jury view and to shorten the trial, thereby reducing the expense of his defense.

We take judicial notice under Oregon Evidence Code, Rule 202, that Whitney was subsequently found not guilty of murdering Foss. *State v. Whitney*, Clackamas County Circuit Court No 80-9-31.

admitted at trial that he had spoken with Whitney about the stolen cocaine and his problem with paying Foss. However, he denied hiring Whitney to kill Foss.

The evidence showed that the killing took place near defendant's house in Beavercreek. Whitney and his accomplice, Freer, had moved to the house with defendant one or two days earlier. On the day of the killing, Whitney went to town to purchase groceries. On his return, defendant left to make a telephone call, there being no phone at the house. Foss arrived while defendant was gone. He asked to see defendant. Whitney told him that defendant was gone and would not be back until later that evening. Foss then went into the nearby woods to urinate. As Foss returned to his car, Whitney began shooting at him. Freer, who was unloading groceries nearby, turned to see Whitney holding a gun and Foss on the ground. Whitney then fired again, and Freer joined in by firing a few shots in the direction of Foss' body. At trial, Freer testified that he and Whitney had no advance plan to shoot Foss at the Beavercreek house, but that they had discussed the possibility of locating Foss in Portland and either scaring or shooting him there.

Shortly after the shooting, defendant returned. He talked briefly with Whitney and then left. Whitney and Freer then covered the body and loaded it into the trunk of Whitney's car. The two spent the next day looking for a place to dispose of the body and finally dumped it in an incinerator at a Portland area dairy. Freer testified that a short time after disposing of the body, he and Whitney met defendant at a restaurant in Portland and that when Whitney told defendant that they had gotten rid of Foss' body, defendant responded, "Good, I don't have to worry about that anymore." Freer left the table for a short time, then returned. As they left the restaurant, Freer noticed that Whitney had a large wad of bills, something Freer said Whitney had not possessed before. Defendant denied that this meeting took place and testified that he was bicycling that day with a friend.

■■ After evidence concerning those events was admitted, the state moved to allow the admission of out-of-court statements allegedly made by Whitney to Freer and

to Kerry Fouts, a woman who had been living with Whitney and Freer, under the coconspirator exception to the hearsay rule. ORS 41.900(6) (repealed effective January 1, 1982, by Oregon Laws 1981, ch 892, § 98).[3] Defendant objected on the grounds that (1) Whitney's out-of-court statements were hearsay, (2) a *prima facie* showing of a conspiracy had not been made and therefore the coconspirator exception to the hearsay rule could not be invoked, and (3) the admission of Whitney's hearsay statements under ORS 41.900(6) violated his confrontation rights guaranteed by the state and federal constitutions.[4]

---

[3] Former ORS 41.900(6) provided:

"Evidence may be given of the following facts:

"* * * * *

"(6) After proof of a conspiracy, the declaration or act of a conspirator against his co-conspirator, and relating to the conspiracy.

"* * * * * ."

Contrary to the usual rationale that exceptions to the rule against hearsay are based upon reliability, in Oregon the coconspirator exception is based upon a theory of mutual agency or partnership. *State v. Yee Guck,* 99 Or 231, 241-42, 195 P 363 (1921); *State v. Ryan,* 47 Or 338, 82 P 703 (1905); *State v. Williams,* 38 Or App 327, 590 P2d 259 (1979); *State v. Davis,* 19 Or App 446, 528 P2d 117 (1974).

According to the state's theory of the case, Whitney was defendant's accomplice to murder. ORS 17.250(4) provides:

"That the testimony of an accomplice ought to be viewed with distrust * * * ."

Arguably, because accomplice hearsay is declared to be untrustworthy by Oregon law, and because the oral admissions of a party are to be viewed with caution, nothing short of confrontation (which includes testimony under oath subject to both cross-examination and the jury's observation of the witness) with the hearsay declarant could satisfy Article I, Section 11 of our state constitution. *See State v. Smyth,* 286 Or 293, 300 n 8, 593 P2d 1166 (1979).

[4] Article I, Section II of the Oregon Constitution, provides in part:

"In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face * * * ."

The Sixth Amendment to the Constitution of the United States provides in part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * * ."

The Sixth Amendment's guarantee of confrontation is binding upon the states. *Pointer v. Texas,* 380 US 400, 85 S Ct 1065, 13 L Ed 2d 923 (1965). For the purposes of this opinion, we assume that the rights guaranteed by the Confrontation Clauses are the same. *See State v. Quinn,* 290 Or 383, 390, 623 P2d 630 (1981); *State v. Florance,* 270 Or 169, 176, 527 P2d 1202 (1974).

The trial court overruled defendant's objection and allowed further testimony by Freer:

"Q. Did Mark talk about how he was going to kill Skip Foss?

"A. Yes, he did.

"Q. What did he say to you?

"A. Well, he threw out an idea of just going right to his front door and using his pistol at the front door or else from a distance with his rifle.

"Q. Now, after you had been at Mark's — the defendant's trailer at Beaver Creek for a period of time and after Skip had been shot and his body placed in the trunk of the Cadillac, I believe you said that the defendant came out right after that?

"A. That's correct.

"Q. He and Mark I believe you said talked and you couldn't hear what they said?

"A. That's correct.

"Q. Did you talk to Mark later about what he had talked with Skip — with the defendant about?

"A. Yes, I did.

"Q. What did Mark tell you?

"A. He told me that he had told Curt that his man had came up there and that he was taken care of and that Curt had told him he would meet him somewhere in town later in the week. * * *

"Q. Then you got to Carrows and I believe you already described what happened there. As you were leaving Carrows I believe you also described some money that you saw Mark Whitney take out of his pocket and put into his wallet?

"A. Yes.

"Q. Later after you saw that or any time after you saw that, did you talk with Mark about the money?

"A. Yes, I did.

"Q. What did you and he talk about?

"A. Well, he had told me that he had gotten it from Curt and his debt was all cancelled. * * *"

The trial court also permitted the state to recall Fouts as a witness. She then testified:

"Q. * * * Yes. During these conversations did there come a time when Mark told you what the defendant had

told him and what he had told the defendant, what they had talked about with respect to his man, what they were going to do if anything?

"A. Mark had told me and Kevin both that he was — that Curt was going to pay him $14,000 to have his man killed. To knock him off is how he said it.

"Q. And the $14,000 figure came from Mark?
"A. Yes it did. * * *
"Q. * * * Did you and Mark have a conversation?
"A. Yeah, we talked for a long time.
"Q. What did Mark tell you?
"A. He told me everything was a go ahead and that he had got the contract from Curt and that they were going to be real busy. And talked about how they were going to stake out Curt's man and stuff like that. * * *"

■ Whitney's statements were undoubtedly hearsay. But that finding does not end our inquiry. · It is well established that some hearsay may be admissible in a criminal case. *See Ohio v. Roberts,* 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980); *see also State v. Rawls,* 252 Or 556, 451 P2d 127 (1969); *State v. Kendrick,* 239 Or 512, 398 P2d 471 (1965); *State v. Reyes,* 209 Or 595, 308 P2d 182 (1957). The state contends that this hearsay was admissible under ORS 41.900(6). We must, therefore, determine whether the state laid a proper foundation under ORS 41.900(6), *i.e.,* did the state make a *prima facie* case of conspiracy before offering Whitney's hearsay statements.

■ We agree with the trial court that a *prima facie* showing of defendant's involvement in a conspiracy to kill Foss was made prior to the challenged testimony of Freer and Fouts. Much of the evidence was circumstantial, but the requisite *prima facie* case was shown. *State v. Blackwell,* 241 Or 528, 407 P2d 617 (1965); *State v. Parker,* 225 Or 88, 91-92, 356 P2d 88 (1960); *State v. Ryan,* 47 Or 338, 344, 82 P 703 (1905); *State v. Curran,* 38 Or App 351, 590 P2d 268, *rev den* 286 Or 303 (1979). Therefore, the testimony concerning the out-of-court statements of Whitney was statutorily admissible. ORS 41.900(6); *see State v. Davis,* 19 Or App 446, 449, 528 P2d 117 (1974); *State v. Garrison,* 16 Or App 588, 603, 519 P2d 1295 (1974); *State v. Capitan,* 8 Or App 582, 592, 494 P2d 443 (1972).

Defendant next contends that the admission of Whitney's out-of-court statements violated his confrontation rights. The constitutionality of ORS 41.900(6), as applied in this criminal case, is therefore in issue.

The United States Supreme Court recently considered the relationship between the federal Confrontation Clause and the rule against hearsay in *Ohio v. Roberts, supra.* In *Roberts,* while the Supreme Court rejected the contention that *all* hearsay must be excluded in the face of a confrontation objection, it said:

"The historical evidence leaves little doubt, however, that the Clause was intended to exclude some hearsay. Moreover, underlying policies support the same conclusion. The Court has emphasized that the Confrontation Clause reflects a preference for face-to-face confrontation at trial, and that 'a primary interest secured by [the clause] is the right of cross-examination.' In short, the Clause envisions 'a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.'

"These means of testing accuracy are so important that the absence of proper confrontation at trial 'calls into question the ultimate "integrity of the fact-finding process." ' " (Footnotes and citations omitted.) 448 US at 63-64.[5]

 *Roberts* instructs that we must first determine whether it is *necessary*[6] to use the proffered hearsay

---

[5] The *Roberts* Court also noted:

"The [United States Supreme Court], however, has recognized that competing interests, if 'closely examined,' may warrant dispensing with confrontation at trial. * * * Significantly, every jurisdiction has a strong interest in effective law enforcement, and in the development and precise formulation of the rules of evidence aplicable in criminal proceedings." (Citations omitted.) *Ohio v. Roberts,* 448 US 56, 64, 100 S Ct 2531, 65 L Ed 2d 597 (1980).

[6] In explaining the test of necessity, the *Roberts* Court stated:

"* * * [I]n conformance with the Framers' preference for. face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant." (Citations omitted.) *Ohio v. Roberts, supra,* 448 US at 65.

evidence, and, if so, whether it is "marked with such trustworthiness that 'there is no material departure from the reason of the general rule [against hearsay].'" 448 US at 65; *see also Dutton v. Evans,* 400 US 74, 89, 91 S Ct 210, 27 L Ed 2d 213 (1970). Here, that first question must be resolved in favor of the state. The hearsay declarant was constitutionally unavailable.[7]

■■ Certain hearsay exceptions rest upon such solid foundations that, assuming the unavailability of the declarant, admission of virtually any evidence falling within them comports with the substance of the constitutional right to confrontation. *Ohio v. Roberts, supra,* 448 US at 66. Among those exceptions are dying declarations and previously cross-examined testimony.[8] The coconspirator exception, however, is not one of those exceptions. In the face of a confrontation objection, therefore, coconspirator hearsay must be excluded in a criminal case, at least absent a showing of "particularized guarantees of trustworthiness." 448 US at 66.

■ We take this language from *Roberts* to mean that, because coconspirator hearsay does not rest upon a solid foundation of reliability, it must not only be shown to be trustworthy in the sense that any hearsay must be shown to be trustworthy, but that it must be shown to have "particularized guarantees of trustworthiness," *i.e.,* it must be exceptionally trustworthy. Any lesser standard would have the practical effect of equating the Confrontation Clause with the rule against hearsay, something the United States Supreme Court has specifically declined to do. *Dutton v. Evans, supra,* 400 US at 86; *California v. Green,* 399 US 149, 155-56, 90 S Ct 1930, 26 L Ed 2d 489 (1970). We therefore examine the evidence here to determine whether Whitney's out-of-court statements meet the second test proscribed in

---

[7] The plurality opinion in *Dutton v. Evans,* 400 US 74, 88 n 19, 91 S Ct 210, 27 L Ed 2d 213 (1970), suggests that a defendant may waive his confrontation rights if he fails to subpoena an available witness. At the time of trial, Whitney was under indictment for the murder of Foss. The case was tried with the understanding that if called as a witness, Whitney would claim his Fifth Amendment rights.

[8] *See, e.g., State v. Rawls,* 252 Or 556, 451 P2d 127 (1969) (previously cross-examined testimony); *State v. Reyes,* 209 Or 595, 308 P2d 182 (1957) (dying declarations); *see also Dutton v. Evans, supra,* 400 US at 80; *Pointer v. Texas, supra,* 380 US at 407.

*Roberts, i.e.,* "particularized guarantees of trustworthiness" or exceptional trustworthiness.

According to the state, Whitney, a drug dealer and heavy cocaine user, agreed to help defendant out of a difficult position by killing Foss. The evidence shows, however, that it was Whitney, and his accomplices Freer and Fouts, who had put defendant in that difficult position by stealing a large quantity of cocaine and money from his car. In its brief, the state acknowledges that Whitney had two motives for encouraging defendant to contract for the murder of Foss: (1) to get paid for killing Foss, and (2) to lay blame on Foss for the theft from defendant's car, thereby concealing his own involvement. It is just as reasonable to conclude, however, that Whitney had the *same personal* motives to kill Foss, absent any encouragement from defendant. Confrontation with Whitney would have allowed defendant's attorney to explore Whitney's personal motivation for killing Foss. The possibility that cross-examination of Whitney could have shown the jury that the statements attributed to him had not in fact been made, or, if made, were unreliable was not "wholly unreal." *Dutton v. Evans, supra,* 400 US at 89. In *Pointer v. Texas,* 380 US 400, 404, 85 S Ct 1065, 13 L Ed 2d 923 (1965), the United States Supreme Court said:

> "And probably no one, certainly no one experienced in the trial of lawsuits, would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case."

██ ██ Furthermore, while the right to cross-examine an adverse witness is the main and essential purpose of confrontation,[9] a valuable secondary advantage which is implicit in the constitutional guarantee of trial by jury is the opportunity for the jury to weigh the demeanor of the witness.[10] Here the character of Whitney is so demonstrably bad and his motives to fabricate and to have bias

---

[9] *Davis v. Alaska,* 415 US 308, 316-18, 94 S Ct 1105, 39 L Ed 2d 347 (1971); *Douglas v. Alabama,* 380 US 415, 418, 85 S Ct 1074, 13 L Ed 2d 934 (1965); *Pointer v. Texas, supra* n 4.

[10] The right of confrontation conferred by the Sixth Amendment is a safeguard to ensure the fairness and accuracy of criminal trials and its reach cannot be divorced from the system of trial by jury contemplated by the Constitution. *Parker v. Randolph,* 442 US 62, 73, 99 S Ct 2132, 60 L Ed 2d 713 (1979).

against defendant are so evident that to permit his statements to go before the jury unchallenged is tantamount to a denial of trial by jury and a denial of due process of law.[11] Confrontation with Whitney would have allowed the jury to observe his demeanor and to judge his credibility. The denial of confrontation here, where the hearsay statements of Whitney were arguably the only *direct* evidence of defendant's involvement in the killing, was devastating to the defense.

The state also acknowledges in its brief that

"* * * the evidence demonstrates that Whitney was not only mentally competent, his control and awareness were such that he masterminded the theft of defendant's cocaine, engineered Foss' murder to conceal that fact, and got paid for the killing by defendant."

It cannot be seriously argued that the unsworn statements of an individual so described are "marked with such trustworthiness," *Ohio v. Roberts, supra,* 448 US at 65, that their maker may be permitted to escape the rigors of full

---

"The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weight the demeanor of the witness." *Barber v. Page,* 390 US 719, 725, 88 S Ct 1318, 20 L Ed 2d 255 (1968).

A primary object of the Confrontation Clause is

" * * * personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States,* 156 US 237, 242-43, 15 S Ct 337, 39 L Ed 409 (1895).

*See also Davis v. Alaska, supra* n 9; *California v. Green,* 399 US 149, 156-58, 90 S Ct 1930, 26 L Ed 2d 489 (1970); *Smith v. Illinois,* 390 US 129, 132, 88 S Ct 748, 19 L Ed 2d 956 (1968); *State v. Smyth, supra* n 3; *State ex rel Gladden v. Lonergan,* 201 Or 163, 173, 269 P2d 491 (1954).

[11] *See Chambers v. Mississippi,* 410 US 284, 93 S Ct 1038, 35 L Ed 2d 297 (1973), where Justice Powell, speaking for eight members of the court, said:

"* * * It is believed that confessions of criminal activity are often motivated by extraneous considerations and, therefore, are not as inherently reliable as statements against pecuniary or proprietary interest." 410 US at 299-300.

"* * * In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." 410 US at 302; *see also Green v. Georgia,* 442 US 95, 97, 99 S Ct 2150, 60 L Ed 2d 738 (1979).

and complete cross-examination and the scrutiny of a jury when those statements in effect say, "Defendant hired me to kill Foss." Whitney's statements directly implicating defendant in the conspiracy to kill Foss were crucial to the state's case against defendant. Their prejudical effect is obvious. Furthermore, the statements contained expressed assertions about past facts and consequently they carried on their face no warning to the jury against giving them undue weight. *Dutton v. Evans, supra,* 400 US at 88.[12] Lack of cross-examination deprived the jury of a satisfactory basis for evaluating the truth of those statements. *See United States v. Adams,* 446 F2d 681, 683 (9th Cir), *cert den* 404 US 943 (1971).

In *State v. Capitan, supra,* the coconspirator's out-of-court statements did not implicate the defendant and therefore "they could not be attributed to an effort 'to shield a more guilty person from the consequences of his own act by shifting the responsibility upon another.' *State v. Aiken,* 41 Or 294, 299, 69 P 683 (1902)." 8 Or App at 593 n 5. Unlike the statement in *Capitan,* however, Whitney's hearsay statements directly implicated defendant in the murder. They therefore *could be* attributed to an effort by Whitney somehow to mitigate the consequences of his own act by shifting primary responsibility for the murder to defendant. Nor was the prejudicial effect of Whitney's assertions rendered less devastating because defendant had ever admitted complicity in the conspiracy. *See Parker v. Randolph,* 442 US 62, 72-73, 99 S Ct 2132, 60 L Ed 2d 713 (1979). He had not. On the contrary, he steadfastly maintained his innocence.

The two in-court witnesses, Freer and Fouts, were equally suspect, although both testified under oath at trial and were subject to cross-examination.[13] Freer, a convicted felon on probation, was Whitney's close friend and willing

---

[12] In its brief, the state concedes that the declarations in the present case involve express assertions of past facts and "double hearsay," *i.e.,* out-of-court admissions of a defendant repeated by a non-testifying coconspirator.

[13] The trustworthiness of the testimony of the witness on the stand who is asked to testify to what the declarant said can be tested by cross-examination. The question of credibility is the same whether he is testifying to another's conduct or to another's words. *Sheedy v. Stall,* 255 Or 594, 596-97, 468 P2d 529 (1970).

accomplice to murder.[14] A drug dealer and cocaine user, he aided Whitney and Fouts in the theft of cocaine and money from defendant's car. He agreed to testify against defendant as part of his negotiated plea to conspiracy to murder Foss, a Class A felony. ORS 161.450. When he testified against defendant, Freer was awaiting sentencing in Clackamas County on his plea and in Multnomah County for probation violation. He subsequently was placed on probation in connection with his involvement in Foss' Murder.

Fouts also was a convicted felon on probation. A cocaine user, she was an accomplice of Whitney and Freer in the theft from defendant's car. Additionally, she was Whitney's girlfriend. She became frightened after the theft from defendant's car and confided to a girlfriend about the theft. The girlfriend reported this to Whitney. He became upset, choked Fouts, and forced her to move from the house they were sharing. Fouts testified that Whitney told her defendant "was going to pay [Whitney] $14,000 to have [Foss] killed." That is a strange statement in view of the state's contention that defendant had contracted to have Whitney kill Foss because defendant was unable to pay Foss. If defendant could pay Whitney $14,000 to kill Foss, why could not defendant use the same $14,000 to pay Foss? There also was evidence that defendant owned substantial equities in real properties. Why could he not have used those resources to pay Foss? Those are questions defendant's attorney undoubtedly would have asked *Whitney* had Whitney been available for cross-examination. Because he

---

[14] In his opening statement, the prosecutor told the jury:

"Now, of course, Kevin Freer was involved in this matter from the very beginning, all throughout the case he was involved from the day when he moved in and knew of the defendant, when he moved into the defendant's rental on 67th clear through the time of his arrest in August, late August. He will testify about every single one of the events that he knows about in connection with this case, including the facts that give rise to the conspiracy, what the conspiracy was, where they went, when they went there, exactly what they did, how Curtis Farber or the defendant participated in discussions, how Mark Whitney shot, particular position of Mark Whitney with the gun and Skip Foss as he was shot, how he fell, how many shots were fired, what he did immediately after that, what they did with the body, when they did it with the body, the opportunity to do away with the body at the Alpenrose Dairy, so forth. Then, of course, going to the Swifty Car Wash there by the Alpenrose Dairy and trying to wash away some of the blood out of the car."

was not, the jury had no basis upon which to evaluate the truth of Whitney's alleged statement. Because the testimony of Freer and Fouts concerning Whitney's assertions against defendant showed only that Whitney made the statements, cross-examination of them as to the genuineness of those statements was no satisfactory substitute for cross-examination of Whitney to test the truth of the statements themselves. *See Douglas v. Alabama,* 380 US 415, 419-20, 85 S Ct 1074, 13 L Ed 2d 934 (1965).

■ The dissent relies upon *State v. Garrison,* 16 Or App 588, 519 P2d 1295 (1974), and *State v. Keller,* 143 Or 589, 21 P2d 807 (1933). We do not find those cases persuasive because they did not involve an objection to the admission of evidence based upon the Confrontation Clause. Both cases apply well-recognized principles to a traditional hearsay objection. We have done the same here, finding that, while Whitney's hearsay statements were admissible under the coconspirator exception to the rule against hearsay, they were not admissible in the face of defendant's *confrontation* objection.

Recognizing (1) the Confrontation Clause's preference for face-to-face confrontation at trial where the witness is subject to cross-examination and the trier of fact is afforded an opportunity to see and hear the witness testify, (2) that the testimony of an accomplice ought to be viewed with distrust, and the oral admissions of a party ought to be viewed with caution, ORS 17.250(4), (3) the crucial importance of Whitney's statements to the state's case and their devastating effect on the defense, (4) the character and circumstances of the out-of-court declarant Whitney, whose character, independent personal motives and bias could have been explored during cross-examination, (5) the fact that Whitney's hearsay statements arguably constitute the only *direct* evidence of defendant's complicity in the conspiracy, (6) that the possibility that cross-examination of Whitney could have shown the jury that the statements attributed to him had not in fact been made, or, if made, were unreliable was not "wholly unreal," (7) that Whitney's statements contained expressed assertions about past facts and consequently carried on their face no warning to the

jury against giving them undue weight, (8) that defendant could not subpoena Whitney as a witness, and (9) the character and circumstances of the in-court witnesses Freer and Fouts, we conclude that Whitney's out-of-court statements lacked "particularized guarantees of trustworthiness," *Ohio v. Roberts, supra,* and that they were so inherently prejudicial that they should not have been received in evidence in the face of defendant's confrontation objection. We hold that the denial of defendant's right to cross-examine Whitney to attempt to demonstrate in the presence of the jury his lack of credibility, ORS 44.370,[15] and his bias, *Davis v. Alaska,* 415 US 308, 94 S Ct 1105, 39 L Ed 2d 347 (1974), violated defendant's confrontation rights under the state and federal constitutions.[16] The trial court, therefore, committed reversible error when it allowed that evidence to be heard by the jury.

■ Because we remand this case for a new trial, it is appropriate to discuss one other issue raised by defendant on appeal: whether the coconspirator exception to the hearsay rule is applicable when he was not charged with a conspiracy. He argues that the state's case against him was really one for conspiracy and he should have been charged with conspiracy. Instead, he was charged with murder. He acknowledges that the state was not required to charge conspiracy to commit murder. *State v. Gardner,* 225 Or 376, 383-85, 358 P2d 557 (1961); *State v. Weitzel,* 157 Or 334, 60 P2d 958 (1937); *State v. Johnston,* 143 Or 395, 22 P2d 879 (1933). However, he contends that when, as here, the evidence shows a conspiracy, a defendant should be charged

---

[15] ORS 44.370 provides:

"A witness is presumed to speak the truth. This presumption, however, may be overcome by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character or motives, or by contradictory evidence. Where the trial is by the jury, they are the exclusive judges of his credibility."

[16] *See, e.g., Ohio v. Roberts, supra* n 5; *Green v. Georgia, supra* n 11; *Parker v. Randolph, supra* n 10; *Davis v. Alaska, supra* n 9; *Chambers v. Mississippi, supra* n 11; *Dutton v. Evans, supra* n 7; *California v. Green, supra* n 10; *Roberts v. Russell,* 392 US 293, 88 S Ct 1921, 20 L Ed 2d 1100 (1968); *Bruton v. United States,* 391 US 123, 88 S Ct 1620, 20 L Ed 2d 476 (1968); *Barber v. Page, supra* n 10; *Smith v. Illinois, supra* n 10; *Douglas v. Alabama, supra* n 9; *Pointer v. Texas, supra* n 4; *accord, State v. Myers,* 229 Kan 168, 625 P2d 1111 (1981); *Davies v. State,* 95 Nev 553, 598 P2d 636 (1979); *State v. Lunn,* 82 N.M. 526, 484 P2d 368 (1971).

under the specific conspiracy statute, ORS 161.450, a Class A felony, rather than with murder, which carries a mandatory life sentence. We disagree. ORS 161.485[17] is a grant of authority to the state. It permits, but does not require, the state to include multiple counts charging both substantive and inchoate offenses. Defendant was properly charged with murder.[18]

Reversed and remanded for a new trial.

**THORNTON, J.,** dissenting.

The majority accepts defendant's argument that the hearsay testimony concerning defendant's alleged admissions and the admissions of his coconspirator (Whitney) inculpating defendant were "so inherently prejudicial that they should not have been received in evidence." I disagree. For reasons which follow I believe the trial judge did not err in receiving the challenged testimony.

It seems to me that the majority has in effect nullified a key provision of the Oregon conspiracy statute applicable at that time, former ORS 41.900(6) (repealed effective January 1, 1982). Additionally, the majority is usurping the function of the jury in this case.

Former ORS 41.900(6) provided:
"Evidence may be given of the following facts:
"* * * * *

"After proof of a conspiracy, the declaration or act of a conspirator against his co-conspirator, and relating to the conspiracy.
"* * * * *"

---

[17] ORS 161.485 provides in part:

"* * * * *

"(3) A person shall not be convicted on the basis of the same course of conduct of both the actual commission of an offense and an attempt to commit that offense or solicitation of that offense or conspiracy to commit that offense.

"(4) Nothing in this section shall be construed to bar inclusion of multiple counts charging violation of the substantive crime and ORS 161.405, 161.435 and 161.450 in a single indictment or information, provided the penal conviction is consistent with subsections (2) and (3) of this section."

[18] Defendant also assigns as error the denial of his motion for acquittal. He argues that, absent the coconspirator hearsay evidence in this case, there was insufficient evidence of guilt to sustain the verdict. We disagree.

In my view the challenged testimony comes squarely within the terms of the above provision.[1] *State v. Keller,* 143 Or 589, 21 P2d 807 (1933); *State v. Garrison,* 16 Or App 588, 602, 519 P2d 1295 (1974).

The incriminating statements involved in *Garrison* were quite similar to those in the case at bar. In *Garrison,* defendant and another young man named Deaver strangled the victim and made off with his valuables. There was testimony that after the murder, and during the course of the conspiracy, Deaver gave the victim's watch and belt to a neighbor in his apartment building to conceal; that Deaver told the neighbor that he and the defendant had taken the victim out in the country and strangled him. Deaver repeated this statement to another neighbor later in the evening while they were going downtown with the stolen watch in an effort to raise bail money for defendant. Deaver did not testify. We held that Deaver's statements incriminating defendant were admissible under ORS 41.900(6) and numerous other authorities cited in that opinion, although not made in defendant's presence.

The majority rests its opinion primarily on the federal and state Confrontation Clauses. The United States Supreme Court recently considered the relationship between the federal Confrontation Clause and the rule against hearsay in *Ohio v. Roberts,* 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980). I cannot agree with the majority's application of the *Roberts* rule. *Roberts* sets out a two-step analysis. First, the *necessity* of the hearsay declaration must be assessed, second, the *reliability* or *trustworthiness* of the declarations must be examined. In the case at hand, the necessity factor was satisfied. The hearsay declarant, Whitney, was unavailable because of his intended Fifth Amendment assertion. As such, the use of the hearsay declarations of Whitney concerning what defendant

---

[1] The parallel provision of the new Oregon Evidence Code, Rule 801, (4)(b)(E), provides as follows:

"Admission by party-opponent. The statement is offered against a party and is:

\* \* \* \* \*

"A statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

told him in private, was necessary from an evidentiary point of view. Thus, the record adequately demonstrates the necessity of the statements.[2]

The second factor of *Roberts*, namely reliability or trustworthiness also has been satisfied. Whitney had personal knowledge of the identity and role of participants in the conspiracy. Whitney was present at the shooting itself and was present during the conversations with defendant. Whitney's declarations to Freer and Fouts were made either immediately or shortly after each conversation with defendant. Defendant's assertion that Whitney's ability to recollect was impaired by Whitney's use of cocaine during the critical times ignores the fact that defendant himself testified that he had private conversations with Whitney during this period. Defendant confided in few other persons concerning the lost cocaine and tried to maintain secrecy. Would defendant have confided in someone he felt was so high on drugs that he could not function properly? Obviously not. Furthermore, Whitney's declarations made to different persons at different times were consistent. There is no apparent reason for Whitney to lie about his agreement with defendant. Indeed, his statements to Freer and Fouts concerning his involvement in a conspiracy with defendant were plainly against his penal interest — a universally recognized indicia of reliability.

The statements made by Whitney cited in the majority opinion were not made in some "bargaining process" with the police. The statements made to Fouts were in fact made prior to the killing of Foss. They were not made in an after-the-fact effort to lay blame on another. Additionally, while the credibility of accomplices who testify or provide information to police ought to be viewed with distrust, ORS 17.250(4), the same does not apply to statements made by an accomplice to his friends. Here, Whitney's statements were not made in court or to the police in an effort to mitigate the consequences of his acts. Whatever reasons one might have for lying to police or a jury do not apply to the statements made by Whitney.

---

[2] The record is silent as to any misconduct on the part of the prosecutor in the introduction of the hearsay statement. *See State v. Herrera,* 286 Or 349, 594 P2d 823 (1979).

The majority finds strange the state's theory that defendant would pay $14,000 to kill Foss when he owed Foss only about $20,000. Perhaps that is strange, but it was for the jury to decide. Indeed, defense counsel stressed this apparent incongruity in his argument to the jury.

The two in-court witnesses, Freer and Fouts, who testified concerning Whitney's statements were subject to cross-examination. Whether they were telling the truth or accurately recalling the conversations with Whitney was a question for the jury.

Unlike in many criminal trials, in the present case defendant took the stand and gave his own version of the affair, including his dealings with Whitney. He denied his involvement in a conspiracy and his alleged conversations with Whitney. The jury apparently chose not to believe him.

In the end, the primary concern of our inquiry must be to determine whether the unavailability of Whitney deprived the jury of a satisfactory basis for evaluating the truth of Whitney's declarations. In the present case, I find that the challenged declarations by coconspirator Whitney relating to the conspiracy possess more than sufficient "indicia of reliability" to satisfy constitutional requirements.

Finally, the majority, it seems to me, ignores or disregards the fact that the trial judge carefully instructed the jury concerning the cautions to be observed in considering testimony regarding defendant's admissions. The text of that instruction is set out in the margin.[3] In addition,

---

[3] The court instructed the jury:

"Testimony regarding oral statements of the defendant are to be viewed with caution, for the defendant may have been misinformed or may not have clearly expressed the meaning, or the witness may have misunderstood him, or it may be that the witness who testifies to the statements, by intentionally or inadvertently altering a few of the expressions really used, gives an effect to the statement completely at variance with what the defendant actually did say. On the other hand, if you can say from the evidence that the alleged statements were clearly and understandingly made by the defendant, that they are precisely identified, and that the language is correctly remembered and accurately reported by the witness, you are authorized to consider such statements for what you deem them to be worth against the defendant making them. But in reaching such a result you must, for the reasons given, proceed with caution."

defendant took the stand and had full opportunity to deny and/or explain the challenged testimony.

In the final analysis the weight to be given the challenged testimony is peculiarly a question for the jury under proper instructions. The majority's reasons for overturning the verdict really boil down to a jury-type argument to demonstrate why the challenged testimony was untrustworthy. In my judgment an appellate court usurps the function of the jury when it sets aside a verdict in a case of this type on the ground put forward in the majority opinion.

I would affirm.

Richardson, J., joins in this dissenting opinion.