Argued April 17, affirmed June 9, petition for rehearing denied
June 30, petition for review denied September 6, 1972

# STATE OF OREGON, *Respondent, v.* ROSCOE L. ANDERSON (No. 60581), *Appellant.*

497 P2d 1218

*Edwin York,* Portland, and *John A. Pickard,* Portland, argued the cause for appellant. On the brief was John A. Pickard, Portland.

*John H. Clough,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

SCHWAB, C.J.

Defendant appeals a jury conviction for a violation of ORS 166.270, Ex-Convict in Possession of a Firearm, on or about September 3, 1970. He assigns numerous errors in the conduct of his trial and in two subsequent hearings on his motion for a new trial.

■ On September 3, 1970, two policemen saw the defendant and two other men enter a Portland grocery store. These officers testified that defendant was then wearing a gold chain attached to his belt and his vest pocket. The police officers knew there was an outstanding felony warrant for defendant's arrest. When they apprehended him inside the store moments later, the chain was gone. A search of the store yielded a

silver .38 caliber derringer, attached to a gold chain. A search of the defendant produced three .38 caliber bullets, one of which was linked by a firearms expert to the same derringer through a comparison of marks left on the cartridge by the derringer's firing pin. There was other testimony that the defendant had a silver .38 caliber derringer on a gold chain in his possession two or three days prior to his arrest as well as on other occasions. Finally, there was testimony from defendant's witnesses which linked him with a gold chain. Defendant's contention that there was insufficient evidence of possession has no merit.

■ Defendant had previously been convicted of arson, and the arson conviction was pending on appeal[1] on September 3, 1970. Defendant contends that because the arson conviction was on appeal, he was not a "convicted person" within the meaning of ORS 166.270 as of September 3, 1970. Several assignments of error are based on this contention. This question was decided contrary to defendant's position in *State v. Brown*, 7 Or App 5, 488 P2d 856 (1971), *rev'd on other grounds*, 262 Or 442, 497 P2d 1169, *rehearing denied* (1972), where we said:

> "Policy considerations underlying the prohibition against convicted felons carrying concealable firearms support a holding that the pendency of an appeal should not affect the conviction underlying the prohibition." 7 Or App at 8.

■ Defendant also asserts that his former offense was not a felony since he was placed on probation for

---

[1] Defendant's conviction was subsequently affirmed by this court in State v. Anderson, 6 Or App 22, 485 P2d 446 on May 28, 1971, the Oregon Supreme Court denied review on September 21, 1971, and the Supreme Court denied certiorari at 406 US 973 (1972).

five years with the proviso that he spend a year in the county jail. He claims his sentence and therefore his crime was for a misdemeanor. The statute under which he was convicted, then ORS 164.030, set the penalty as "imprisonment in the penitentiary for not more than 10 years," and since the then relevant statute, ORS 161.030(2), defined a felony as "* * * a crime which is punishable by imprisonment in the penitentiary of this state * * *," his conviction was for a felony. *State v. Commedore,* 239 Or 82, 396 P2d 216 (1964).

■ Defendant next assigns as error the trial court's refusal to admit into evidence hearsay statements allegedly made by a third party against penal interest. Defendant attempted to introduce hearsay evidence that one of the persons who had entered the grocery store with him was an ex-convict and had actually admitted possessing the weapon. Oregon has, contrary to defendant's assertion that it "is a case of first impression," determined that such statements are inadmissible under the hearsay rule.[2] As was stated in *State v. Coleman,* 119 Or 430, 440, 249 P 1049 (1926):

> "* * * It is a well-established principle of criminal law that a defendant in a criminal case cannot be permitted to show that a third person has admitted that he committed the crime charged against the defendant * * *."

---

[2] Even if Oregon permitted such evidence it is doubtful that the evidence offered here would be admissible. The defendant made an offer of proof on this issue which disclosed that he had called an investigator hired by his counsel to his home to meet one Pete Bastine. The man referred to as Bastine, and who was unknown to the interviewer, said in effect that he was in the grocery store with the defendant and that he in fact had the derringer in his possession rather than the defendant. Defendant later told the investigator that Bastine had a felony record. This man then departed without offering any proof of identification or address and was never seen again even though the defendant and the investigator allegedly tried for several days to locate him.

*See also, State v. Farnam,* 82 Or 211, 227, 253, 161 P 417, 18A Ann Cas 318 (1916) ; *State v. Fletcher,* 24 Or 295, 300, 33 P 575 (1893).

Defendant assigns as error the state's impeachment of one of its own witnesses. The witness on direct examination testified concerning several occasions prior to September 3, 1970, when he had seen the defendant with a silver derringer and a chain attached to his pocket in the same manner it was attached on September 3, 1970. When the witness denied seeing the defendant with the weapon on or about September 1, 1970, the prosecutor impeached him with an inconsistent statement previously given. The prosecutor also used other statements previously given by the witness to amplify the description of the derringer on a chain and to expand on when and how frequently the witness had observed the defendant possessing the weapon. Connecting the defendant with the weapon on previous occasions—in particular about September 1, 1970—was important to the circumstantial evidence case for possession on September 3, 1970. The same necessity existed to create an identity between the derringer chained to defendant on previous occasions and the derringer on a gold chain found in the grocery. This witness's evidence supported the testimony of the two policemen who testified that they had observed a gold chain on defendant just prior to his entering the grocery store where he was arrested.

■ The answers which the witness initially gave were contradictory to those which he had previously given when interviewed privately. The statements given by the witness when interviewed were admissible. *State v. Gardner,* 2 Or App 265, 267, 467 P2d 125, Sup Ct *review denied* (1970).

■ Defendant predicates two assignments of error—the trial court's refusal to grant a mistrial and the refusal to grant a new trial—on problems which arose during selection of the jury. During the examination of the jurors on *voir dire,* one prospective juror informed the court that he had observed the defendant writing down the names and addresses of the jury and was concerned over this matter.[9] Notwithstanding the fact that it was the defendant's own actions which had created this anxiety, the trial court took considerable measures to overcome any conceivable prejudice to defendant. First, the defense, *sua sponte,* was given an additional peremptory challenge which it later exercised to remove the concerned juror. Second, immediately after this incident, the court addressed the prospective jurors:

> "* * * May I ask * * * if any of you know of any reason why you couldn't be a completely fair and impartial juror in this matter? If there is, you have a responsibility to so advise the Court, for the reason that the defendant is entitled to a fair trial."

There was no response, and both counsel continued *voir dire* which resulted in several other prospective jurors being excused and replaced. After the verdict was returned, the court in considering the motion for a new trial held an additional hearing with the jurors. This discussion indicated that prior to being excused, the "concerned" juror had mentioned the incident to other jurors, but none indicated that this resulted in any apprehension or prejudice on his part.

---

[9] Defendant explained his actions as being only intended to determine whether there had been any systematic exclusion of blacks from the jury. When this matter was called to his attention by the court he agreed to turn the list over to his counsel and to stop taking any further names.

To the contrary, several specifically stated to the court that they believed their names and addresses were common knowledge and a matter of public record.

Defendant had the burden of showing that he was deprived of a fair trial as a result of this incident. *State v. Gardner*, 230 Or 569, 371 P2d 558 (1962). The trial court afforded defendant every opportunity to determine if the jurors had been improperly influenced. The evidence shows that they were not, and there was no error.

■ A further assignment of error is made concerning a separate incident of alleged juror misconduct. The day after the verdict was returned, one of the jurors accused another of having made remarks in the jury room concerning activities of the defendant which were not brought out at the trial. The court held two exhaustive evidentiary hearings to consider this allegation. The jurors, under oath, were examined both individually and as a group. None but the accusing juror recalled the alleged improper statements. There is no basis for disturbing the trial judge's conclusion that there was no jury misconduct.

■ Defendant contends that ORS 166.270 is unconstitutional.[2] This assignment is raised here for the first time and, therefore, *State v. Zusman* controls:

> "Challenges to the constitutionality of a statute should be raised in the trial court and not for the first time on appeal." 1 Or App 268, 271, 460 P2d 872, Sup Ct *review denied, cert denied* 398 US 905 (1970).

---

[2] ORS 166.270 has previously been held constitutional by the Oregon Supreme Court. State v. Robinson, 217 Or 612, 343 P2d 886 (1959); State v. Hoover, 219 Or 288, 308-10, 347 P2d 69, 89 ALR2d 695 (1959). *See also*, State v. Cartwright, 246 Or 120, 133-37, 418 P2d 822, *cert denied* 386 US 937 (1967).

*See also, State v. Krause,* 251 Or 318, 445 P2d 500 (1968).

■ Finally, defendant has assigned as separate errors, or in combination with his other assignments, the trial court's denial of his motion for a new trial. This motion was based on the grounds that: he was not a convicted person; the alleged statement against penal interest was not admitted; the state was permitted to impeach its own witness; the evidence was insufficient; and, lastly, there was misconduct by the prosecutor in his summation. Our previous discussion of the assignments of error forecloses defendant as to the first four grounds. Further:

"'* * * Denial of a motion for a new trial based upon alleged errors committed on the trial, of which errors the appellant had knowledge at the time, may not be assigned as error on appeal. *Sullivan et al v. Carpenter,* 184 Or 485, 494, 199 P2d 655 (1948); *Shearer v. Lantz,* 210 Or 632, 312 P2d 581 (1957).'" *State v. Truxall,* 2 Or App 214, 217, 467 P2d 643 (1970).

Although for the latter reason we do not consider the allegation of misconduct by the prosecutor we note that the criticized comments were at most minor irregularities.

Affirmed.