Argued November 16, 1977, affirmed January 16, reconsideration denied
February 24, petition for review denied May 31, 1978

## STATE OF OREGON, *Respondent,*
### *v.*
## KELLIE DIANE PARTEE, *Appellant.*
### (No. 17-120a, CA 7887)

573 P2d 751

Stephanie A. Smythe, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Melinda L. Bruce, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Kathleen Dahlin, Certified Law Student, Salem.

Before Schwab, Chief Judge, and Lee and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

Defendant was convicted by a jury of burglary in the first degree. ORS 164.225. On appeal she raises several assignments of error, only four of which merit discussion.

In the early morning hours of July 26, 1976, the Sprouse-Reitz store on Cornell Road was burglarized. The store was entered at the rear by prying off a screen. Two watch display cases and more than 100 watches, most of them Timex and Litronix brands, were taken.

Richard Gallatin and Julie Snyder had arrived in Portland in June, 1976. Shortly thereafter they met defendant and Fiore Garippo. Garippo offered Gallatin and Snyder a room in the house he was sharing with defendant. A few days later the four moved to a house on Northwest Cornell Road near the Sprouse-Reitz store.

Snyder testified for the prosecution that on the evening of July 25 she and defendant walked to that store and as they stood in front defendant told her that "* * * she thought that it would probably be a really easy place to rob because she had worked there before and there was a vent in the back she thought could be pried off real easy." Snyder said she and defendant then went to the rear of the building. Although defendant had a hammer, saw and chisel, they decided that the vent would be too big for them to handle.

Snyder testified that she and defendant then returned home. When they arrived, defendant told Gallatin and Garippo that the store would be easy to "rob." Snyder went to bed shortly thereafter and the other three left. Sometime later she was awakened by Gallatin, and when she went into the living room she saw flower pots, plant hangers, rolls of wallpaper and some goldfish that had not been there before. She also noticed a cardboard box containing Timex and Litronix watches. The defendant, Gallatin and Garippo

all told Snyder that the items had come from Sprouse-Reitz. She was later given a watch by Garippo.

Gallatin also testified for the prosecution. He said that he, Garippo and defendant committed the burglary. He explained how they had pried off a vent to enter the rear of the store and that he had run after hearing an alarm a few minutes later. After he fled the store, he got into his truck parked nearby and picked up Garippo and defendant as they came out carrying goldfish, plant pots and hangers and a revolving watch display case full of watches. When they got home, Garippo put the watches into a cardboard box and placed the box in the fireplace.

The day after the burglary Kim Dailey and Brad Baysinger moved into the Cornell Road house with the other four persons. Dailey testified that defendant admitted to her that she "* * * went in and got some goldfish from Sprouse-Reitz" and that some watches she had were also from that store. Dailey also said she saw a detergent box containing watches in the fireplace. Baysinger gave similar testimony. He also said that he bought from Garippo a watch which he was told had been stolen.

Several days after the burglary, Garippo kicked Gallatin and Snyder out of the Cornell Road house. They went to the police. Based on their statements, a warrant was issued authorizing a search of the Cornell Road residence. Officers who conducted the search found several watches, including two Timex and one Litronix. They also found a sack containing empty watch boxes and a plant pot, plant hangers and two rolls of wallpaper. In the garage they discovered parts of a Timex display case. Up the street from the house another officer found a detergent box containing 36 watches.

■ Defendant challenges the admission of certain testimony concerning defendant's prior employment at the Sprouse-Reitz store. The store manager, Mr. Sutherland, was allowed to read from and summarize

[ 120 ]

defendant's employment records, including warnings issued to defendant for violations of rules and a notice of termination issued about one year prior to trial, which indicated that defendant's employment had been terminated for breaking rules, neglecting assignments and allowing friends to interfere with her work. The records from which he testified were carbon copies of records prepared by a former manager of the store. It was the practice of the business to send the originals to the home office and to retain the carbon copies for use in the store. Defendant objected to this testimony on the grounds that it violated the best evidence rule and that it deprived her of the right of confrontation guaranteed by Art I, § 11, Oregon Constitution and the Sixth Amendment to the United States Constitution.[1]

There was no dispute over the accuracy of the carbon copies; therefore, the "mystical ideal of seeking 'the best evidence' or 'the original document' will not be pursued." *State v. White,* 4 Or App 151, 155-56, 477 P2d 917, 919 (1970).

■ Even if there were a good faith dispute over the accuracy of the carbon copies, they satisfied the requirements of ORS 41.690[2] and were, therefore, admissible. *See Cascade Lumber Terminal, Inc. v. Cvitanovich,* 215 Or 111, 332 P2d 1061 (1958).

■■ Defendant has cited no decision in which the admission of business records satisfying requirements like those of ORS 41.690 has been held to violate the

---

[1] Art I, § 11, Oregon Constitution provides that "In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face * * *." The United States Constitution, Amendment VI provides that "In all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him."

[2] ORS 41.690. "A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

confrontation guarantee of either the United States Constitution or any state constitution. In several cases the admission of such records has been upheld despite a challenge based upon the Confrontation Clause of the Sixth Amendment. *E.g., United States v. Lipscomb,* 435 F2d 795 (5th Cir 1971), *cert denied,* 401 US 980 (1971); *United States v. Leal,* 509 F2d 122, 127 (9th Cir 1975); *People v. Gambos,* 5 Cal App 3d 187, 194, 84 Cal Rptr 908, 912 (1970).

The issue has never been raised under the Oregon Constitution. The Confrontation Clause of the Oregon Constitution does not prohibit all hearsay. *State ex rel Gladden v. Lonergan,* 201 Or 163, 180, 269 P2d 491 (1954). Although defendant did not have the opportunity to cross-examine the person who originally prepared the records, she was able to cross-examine Mr. Sutherland, who was familiar with the record-keeping practices of Sprouse-Reitz. In light of the necessity for the use of such records even in criminal prosecutions, we are persuaded that she was not denied her right to confrontation, so the admission of the employment records did not violate the Oregon Constitution or the United States Constitution.

■ Defendant contends that the court should have granted her motion for acquittal based on an asserted lack of corroboration of accomplice testimony required by ORS 136.440.[3] Mr. Sutherland testified that watches found in defendant's jewelry box and elsewhere in the Cornell Road residence and pieces of a watch display case found in the garage were the same or very similar to those taken from the store. An

---

[3]  ORS 136.440. "(1) A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances of the commission.

"(2) As used in this section, an 'accomplice' means a witness in a criminal action who, according to the evidence adduced in the action, is criminally liable for the conduct of the defendant under ORS 161.155 and 161.165 * * *."

[ 122 ]

expert witness testified that labels on the watch boxes found in the house were made by a label maker used at Sprouse-Reitz. That evidence was corroboration and satisfied the requirements of ORS 136.440. *See State v. Duncan,* 248 Or 288, 434 P2d 336 (1967); *State v. Caldwell,* 241 Or 355, 405 P2d 847 (1965). We do not, therefore, have to determine which of defendant's various associates were or were not accomplices.

■ ■  Defendant next assigns as error the exclusion of evidence of a juvenile court adjudication with which he sought to impeach the testimony of Gallatin. On cross-examination Gallatin testified that in addition to the Sprouse-Reitz burglary he had been involved in a series of robberies and burglaries with Garippo and others prior to the time when he went to the police. Gallatin also testified that he was aware that he could have received a long prison sentence if convicted of those crimes, and he admitted that he had been promised immunity with respect to all the crimes in return for his testimony.

The following exchange occurred during the cross-examination after the witness had admitted a prior conviction for reckless driving:

(Defense Counsel)

"Q:  Did you testify that, at that time, that you had been convicted of another crime?·

"A:  I don't know if I did or not.

"* * * * *

"Q.  Maybe I can refresh your recollection to [sic] the preliminary hearing."

At that point, the court ruled that defendant could not use Gallatin's preliminary hearing testimony to establish a prior juvenile adjudication involving auto theft to impeach Gallatin. Defendant argued then and now that under the confrontation guarantees of the Oregon Constitution and the United States Constitution as applied in *Davis v. Alaska,* 415 US 308, 94 S Ct 1105, 39 L Ed 2d 347 (1974), he should have been permitted

to put before the jury the witness' juvenile offense because "it could tend to show bias."[4]

*Davis* did hold that the right to confrontation was unconstitutionally denied when the defendant was not allowed to show that a witness might have been biased or otherwise lacking in impartiality. In that case the witness was on probation after a juvenile adjudication, and that fact might have had a present biassing effect on his testimony. That was not the situation here, and the defendant had every opportunity to examine the witness about matters which would go to bias, prejudice or ulterior motive. There was no error. *State v. Burr,* 18 Or App 494, 525 P2d 1067 *rev den* (1974).[5]

■ The defendant's final assignment concerns the following instruction given to the jury concerning accomplice testimony:

"THE COURT: * * * You are further instructed that the testimony of an accomplice should be viewed with distrust. *However, in this connection I instruct you that the credibility of such accomplice is for you to pass upon as you pass upon the credibility of any other witness,* and I instruct you that as a matter of law Richard Gallatin was an accomplice in this case." (Emphasis supplied.)

The court was required by ORS 17.250(4)[6] to give the first sentence of this instruction. The italicized portion of the second sentence, defendant argues, had the

---

[4]Defendant sought to show the "conviction" by using the transcript of the preliminary hearing at which the witness had testified. Assuming, *arguendo,* that a juvenile adjudication were a conviction for the purpose of ORS 45.600, the method sought to be used was not permissible under that statute. The state did not raise that point at trial or in this court.

[5]On appeal defendant attempts to raise a due process issue based on the prosecution's having instructed the witness not to mention the juvenile matter if asked about prior convictions. Although the instruction was made known to the trial judge during the argument on the *Davis* issue, it was not made an issue at the trial. *State v. Greenwood,* 22 Or App 545, 540 P2d 389 (1975); *State v. Anderson,* 10 Or App 34, 497 P2d 1218 (1972).

[6]ORS 17.250. "The jury, subject to the control of the court, in the cases specified by statute, are the judges of the effect or value of evidence addressed to them, except when it is thereby declared to be

effect of modifying or negating the first sentence and was, therefore, improper. A potential for confusion was inherent in the instruction. *See* Annotation, 4 ALR 3d 351, 356 (1965). While an instruction without that potential could have been framed, the Supreme Court has held that the giving of the challenged instruction is not error. *State v. Dugger,* 161 Or 355, 88 P2d 990 (1939); *compare State v. Stacey,* 153 Or 449, 56 P2d 1152 (1936).

Affirmed.

conclusive. They are, however. to be instructed by the court on all proper occasions:

"* * * * *

"(4) That the testimony of an accomplice ought to be viewed with distrust * * *."