# STATE OF OREGON,
*Respondent,*
*v.*
# CURTIS L. FARBER,
*Appellant.*

(No. 80-9-30, CA 19380)

652 P2d 372

Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Thomas H. Denney, Assistant Attorney General, Salem, for petition.

THORNTON, J.

Van Hoomissen, J., dissenting.

## THORNTON, J.

The state petitions for reconsideration of our former opinion in this case. *State v. Farber,* 56 Or App 351, 642 P2d 668 (1982). We grant the petition and withdraw the former opinion.

In our prior opinion we held that the admission in evidence of certain statements made by an alleged co-conspirator was prejudicial error, and we therefore reversed defendant's conviction and remanded the case for a new trial. We now reverse our ruling on that pivotal issue. In order to make our ruling on reconsideration clear, we find it necessary to repeat significant portions of our former opinion.

Defendant appeals his jury conviction for murder[1] for his involvement in the shooting death of Harry Foss, Jr. He assigns as error the admission of certain inculpatory statements concerning him made by an alleged co-conspirator. He contends that no conspiracy was established to qualify the hearsay statements under the "co-conspirator rule" and that, alternatively, even if there was a conspiracy established, the admission of the inculpatory statements violated his confrontation rights under Article 1, section

---

[1] ORS 163.115(1) provided in part as follows:

"(1) Except as provided in ORS 163.118 and 163.125, criminal homicide constitutes murder when:

"(a) It is committed intentionally by a person who is not under the influence of an extreme emotional disturbance;

" * * * * * "

Although defendant was charged in the language of a principal, the state's theory was that defendant was liable as an aider and abetter under ORS 161.155, having allegedly hired another to commit the murder. ORS 161.155 reads as follows:

"A person is criminally liable for the conduct of another person constituting a crime if:

"(1) He is made criminally liable by the statute defining the crime; or

"(2) With the intent to promote or facilitate the commission of the crime he:

"(a) Solicits or commands such other person to commit the crime; or

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime; or

"(c) Having a legal duty to prevent the commission of the crime, fails to make an effort he is legally required to make."

11 of the Oregon Constitution[2] and the Sixth Amendment of the United States Constitution.[3] Defendant also assigns as error the denial of his motion for acquittal. For the following reasons, we now affirm the defendant's conviction but remand for imposition of a new sentence.

The state's theory at trial was that defendant was dealing in cocaine supplied by the victim. Near the time of his death, Foss "fronted" a large quantity of cocaine[4] to defendant for him to sell at a profit and in turn to pay Foss for the cocaine with the proceeds. The drug transaction was aborted when a large portion of the cocaine was stolen from defendant's car. Fearful of the potential repercussions of being unable to pay Foss for the cocaine, defendant arranged with a friend of his, Whitney, to kill Foss.

Defendant stipulated at trial that Foss was shot by Whitney. Defendant admitted that he spoke with Whitney about the stolen cocaine and the problems with Foss, but he denied hiring Whitney to do the killing.

The evidence showed that the killing took place in front of defendant's house in a rural community known as Beavercreek. Whitney and Kevin Freer had moved to the house with defendant one or two days before the shooting, apparently for security reasons. On the day of the shooting, Whitney went to town to purchase some groceries. On his return, defendant left to make a phone call, there being no phone at the Beavercreek residence. Foss arrived while defendant was gone. He asked to see defendant, but Whitney told him that defendant was gone and would not

---

[2] Article I, section 11 of the Oregon Constitution reads in pertinent part:

"In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face * * *."

[3] The Sixth Amendment to the United States Constitution reads in pertinent part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

The Sixth Amendment's guarantee of confrontation is binding on the states. *Pointer v. Texas,* 380 US 400, 85 S Ct 1065, 13 L Ed 2d 923 (1965). For the purposes of this opinion, we assume that the rights guaranteed by the two Confrontation Clauses are the same. *See State v. Quinn,* 290 Or 383, 390, 623 P2d 630 (1981); *State v. Florance,* 270 Or 169, 176, 527 P2d 1202 (1974).

[4] The transaction involved 11 ounces of cocaine at a value of $1,950 per ounce.

be back until later that evening. Foss then went into the nearby woods to urinate. As Foss returned to his car to leave, Whitney began firing at him. Freer, who was still unloading groceries at the time, turned to see Foss on the ground and Whitney holding the gun. Whitney then fired a number of additional rounds with Freer joining in. Freer testified that he and Whitney had no advance plan to shoot Foss at the Beavercreek residence but that he and Whitney had discussed the possibility of locating Foss in Portland and either scaring him or shooting him.

Defendant returned shortly after the shooting, talked briefly with Whitney and then left. Whitney and Freer covered the body and loaded it into the trunk of Whitney's car. The two spent the next day looking for a place to dispose of the body. They finally decided to place it in an incinerator at a local dairy.

Freer testified that a short time after disposing of the body he and Whitney met defendant at a restaurant in Portland. At that time Whitney told defendant that they had got rid of Foss' body. Defendant responded, "Good, I don't have to worry about that anymore." Freer left the table for a short time, then returned. As they left the restaurant, Freer noticed that Whitney had a large wad of bills, something Freer said Whitney had not possessed before. Defendant denied that this meeting took place, and testified that he was bicycling that day with a friend.

After evidence concerning the above events was admitted, the state moved to allow the admission of hearsay statements of Whitney under the co-conspirator exception to the hearsay rule. Over defendant's objection, the court ruled that a *prima facie* case of conspiracy had been established and allowed further testimony by Freer and Kerry Fouts, a 23-year-old woman who was living with Whitney and Freer in defendant's rented home.

Freer was called first and testified in relevant part:

"Q. Did Mark talk about how he was going to kill Skip Foss?

"A. Yes, he did.

"Q. What did he say to you?

"A. Well, he threw out an idea of just going right to his front door and using his pistol at the front door or else from a distance with his rifle.

"Q. Now, after you had been at Mark's — the defendant's trailer at Beaver Creek for a period of time and after Skip had been shot and his body placed in the trunk of the Cadillac, I believe you said that the defendant came out right after that?

"A. That's correct.

"Q. Did you talk to Mark later about what he had talked with Skip — with the defendant about?

"A. Yes, I did.

"Q. What did Mark tell you?

"A. He told me that he had told Curt that his man had came up there and that he was taken care of and that Curt had told him he would meet him somewhere in town later in the week. * * *

"Q. Then you got to Carrows [Restaurant] and I believe you already described what happened there. As you were leaving Carrows I believe you also described some money that you saw Mark Whitney take out of his pocket and put into his wallet?

"A. Yes.

"Q. Later after you saw that or any time after you saw that, did you talk with Mark about the money?

"A. Yes, I did.

"Q. What did you and he talk about?

"A. Well, he had told me that he had gotten it from Curt and his debt was all cancelled. * * *"

Fouts was then recalled to supplement her earlier testimony:

"Q. * * * Yes. During these conversations did there come a time when Mark told you what the defendant had told him and what he had told the defendant, what they had talked about with respect to his man, what they were going to do if anything?

"A. Mark had told me and Kevin both that he was — that Curt was going to pay him $14,000 to have his man killed. To knock him off is how he said it.

"Q. And the $14,000 figure came from Mark?

"A. Yes it did. * * *

"Q. * * * Did you and Mark have a conversation?

"A. Yeah, we talked for a long time.

"Q. What did Mark tell you?

"A. He told me everything was a go ahead and that he had got the contract from Curt and that they were going to be real busy. And talked about how they were going to stake out Curt's man and stuff like that. * * *"

■ Defendant first argues that the state's case against him was in truth one for conspiracy and that he should have been charged as such. Defendant was instead charged with murder for his involvement. Defendant acknowledges the long-standing rule followed by Oregon that the state is not required to charge conspiracy to commit murder, but may instead charge murder. *State v. Gardner,* 225 Or 376, 383-85, 358 P2d 557 (1961); *State v. Weitzel,* 157 Or 334, 69 P2d 958 (1937); *State v. Johnston,* 143 Or 395, 22 P2d 879 (1933). He argues that, when the facts show a conspiracy, the defendant should be charged under the specific conspiracy statute, a Class A Felony, rather than murder, with its mandatory life sentence. ORS 161.485[5] is a grant of authority to the state. It permits, but does not require, the state to include multiple counts charging both substantive and inchoate offenses. Defendant properly was charged with murder.

■ Defendant next argues that, even if he was properly charged with murder, the statements of Freer and Fouts should not have been admitted, because they constituted inadmissible hearsay. Defendant maintains that there was insufficient proof of a *prima facie* showing of conspiracy before the statements were allowed.

---

[5] ORS 161.485 provides in relevant part:

" * * * * *

"(3) A person shall not be convicted on the basis of the same course of conduct of both the actual commission of an offense and an attempt to commit that offense or solicitation of that offense or conspiracy to commit that offense.

"(4) Nothing in this section shall be construed to bar inclusion of multiple counts charging violation of the substantive crime and ORS 161.405, 161.435 and 161.450 in a single indictment or information, provided the penal conviction is consistent with subsections (2) and (3) of this section."

The long-standing co-conspirator exception to the hearsay rule, codified in former ORS 41.900(6),[6] provides:

"Evidence may be given of the following facts:

" * * * * *

"(6) After proof of a conspiracy, the declarations or acts of a conspirator against his co-conspirator relating to the conspiracy."

Conspiracies are by their nature usually secret agreements, and the courts have recognized that they must often be proven through circumstantial evidence establishing an "* * * agreement between the parties to effect or accomplish an unlawful purpose." *State v. Ryan,* 47 Or 338, 344, 82 P 703 (1905); *see also State v. Van Nostrand,* 2 Or App 173, 178, 465 P2d 909, *rev den* (1970). Direct proof is often unavailable to show a conspiracy. As the Supreme Court has explained:

"A conspiracy may be proven by showing the declarations, acts and conduct of the conspirators. It is seldom possible to establish a specific understanding by direct agreement between the parties to effect or accomplish an unlawful purpose. Usually, therefore, the evidence must be necessarily circumstantial in character, and will be sufficient, if it leads to the conviction that such a combination in fact existed. Thus, if it be shown that the conspirators were apparently working to the same purpose,—that is, one performing one part and another another,—each tending to the attainment of the same object, so that in the end there was apparent concert of action, whether they were acting in the immediate presence of each other or not, it would afford proof of a conspiracy to effectuate that object: *Mussel Slough Case* (C.C.) 5 Fed. 680; *United States v. Sacia* (D.C.) 2 Fed. 754. Such proofs would evidence prima facie a conspiracy. * * *" *State v. Ryan, supra,* 47 Or at 344.

---

[6] The parallel provision of OEC 801(4)(b)(E), provides as follows:

"(4) A statement is not hearsay if:

" * * * * *

"(b) The statement is offered against a party and is:

"* * * * *

"(E) A statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

Therefore, "[i]t is recognized that the courts have been most liberal in permitting very slight evidence to be sufficient to permit a jury to find a conspiracy." *State v. Parker,* 225 Or 88, 92, 356 P2d 88 (1960).

The proof showed that Foss "fronted" defendant a large quantity of cocaine to be sold. In his dealings in general, Foss implied that he had "Mafia" connections that could be used to collect unpaid debts. Given the loss of most of the cocaine through the theft, the jury could have inferred that defendant had a good motive for ridding himself of Foss. Fouts testified that, upon defendant's discovery of the cocaine theft, he told her that he would have to pay his "man" (Foss) back for the stolen drugs "or else take care of the guy." Fouts also testified that in her presence defendant and Whitney discussed how they might have to "knock him [Foss] off" and that Whitney would be paid for the killing. After the shooting, and after placing the body in the incinerator, Whitney and Freer met defendant at a restaurant. There, upon learning that the body had been taken care of, defendant responded, "Good, I don't have to worry about that anymore." There was testimony that, when entering the restaurant, Freer and Whitney had only enough money for the meal but when leaving, Whitney had a wad of money totalling between $500 and $1,000. From the circumstances of the money's sudden appearance, a rational trier of fact could reasonably conclude that the money was part of a payoff for the killing.

While it is true that much of the above proof was circumstantial, the requisite *"prima facie"* case was shown. *State v. Ryan, supra,* 47 Or at 344; *State v. Van Nostrand, supra.* Therefore, we conclude that the requisite foundation provided in former ORS 41.900(6) was satisfied. *See State v. Davis,* 19 Or App 446, 528 P2d 117 (1974); *State v. Garrison,* 16 Or App 588, 519 P2d 1295 (1974); *State v. Capitan,* 8 Or App 582, 494 P2d 443 (1972).

Whitney was never called as a witness. At the time of defendant's trial, he had not yet gone to trial for his part in the killing and, if called, would have asserted his Fifth Amendment right to remain silent.[7] Defendant argues that

---

[7] The following discussion took place between defense counsel and the court:

"MR. BURT: This is on the record outside the presence of the jury.

his rights under the Oregon and United States Constitutions to confrontation were violated by admitting the hearsay statements of Whitney when Whitney could not be confronted. Defendant does not expressly argue that former ORS 41.900(6) is unconstitutional but argues that, because Whitney was unavailable, his confrontation rights were violated.

The issue presented requires an examination of the relationship between the Confrontation Clause and otherwise admissible hearsay. Hearsay evidence is excluded because of its untrustworthiness. *Sheedy v. Stall*, 255 Or 594, 596, 468 P2d 529 (1970). The declarant's accuracy and veracity cannot be tested by cross-examination. *Sheedy v. Stall, supra; State v. Kendrick*, 239 Or 512, 515, 398 P2d 471 (1965). Thus, the introduction of hearsay evidence, and the consequent lack of cross-examination, potentially restricts the confrontation rights of a defendant that is the hallmark of the Confrontation Clause. Davenport, *The Confrontation Clause and the Co-conspirator Exception in Criminal Prosecutions: A Functional Analysis*, 85 Harv L Rev 1378 (1972).[8]

---

"At yesterday's session, Your Honor, we were discussing and I was presenting some — a position with regard to the admission of hearsay evidence under the exception apparently granted by ORS 41.900 Sub 6 as to co-conspirators. Now I don't know that this record has been made clear, but I'm going to say now for the record that I have been told by Mr. Birkland who is the attorney for Mr. Mark —

"THE COURT: Whitney.

"MR. BURT: — Whitney. That if I were to subpoena Mr. Whitney and call him to the stand he would take the Fifth Amendment. Mr. Birkland has told me that he would so testify. And I don't know what he's told Counsel for the State. But in any event, if there's any question about what he has said, I would request permission of the Court to put him on the record under oath. Since he's told me that Mr. Whitney will take the Fifth Amendment, under the case law as I read it it will be unethical for me to call him and to force him to do that in front of the jury.

"THE COURT: Yes.

"MR. BURT: So I'm in a position of not being able to call Mark Whitney as a witness because he has got a perfectly legitimate Fifth Amendment privilege, in my opinion. And if I didn't agree, it wouldn't make any difference. * * *"

[8] In *State v. Weston*, 109 Or 19, 219 P 180 (1923), the prosecutor was allowed to read into evidence a 37-page statement made by an accomplice witness inculpating the defendant. The court found the hearsay narrative to be prejudicial to defendant. The court held:

In *Dutton v. Evans,* 400 US 74, 91 S Ct 210, 27 L Ed 2d 213 (1970), a cell-mate of a co-conspirator testified about a post-arraignment statement made by the co-conspirator which indirectly suggested that defendant had committed the murder. In dealing with the relationship between the Georgia co-conspirator hearsay exception[9] and the Sixth Amendment, the court acknowledged that the Confrontation Clause does not bar the admission of all hearsay. 400 US at 80. On the other hand, although the hearsay rule and the Confrontation Clause have similar bases, the two do not precisely coincide. 400 US at 82 (quoting *California v. Green,* 399 US 149, 155-56, 90 S Ct 1930, 26 L Ed 2d 489 (1970)). Under *Dutton,* an analysis must be made to determine whether there are sufficient indicia of reliability to permit the introduction of the hearsay declaration in spite of the lack of opportunity for the defendant to cross-examine the declarant. *See United States v. Nick,* 604 F2d 1199 (9th Cir 1979); *United States v. Weiner,* 578 F2d 757 (9th Cir), *cert den* 439 US 981 (1978).[10]

---

"The statement made and signed by Stilwell was not competent against Weston, except as to the whole of the matter explaining, construing and affecting that part of the subject matter of the writing introduced by defendant.

"A safeguard provided against hearsay evidence, that shelters alike the strong and the weak, the innocent and the guilty, is:

" 'In all criminal prosecutions, the accused shall have the right * * to meet the witnesses face to face * *.' Article I, Section 11, Oregon Const.

" 'The right of confrontation is the right to the opportunity of cross-examination.' 3 Wigmore on Ev. (2 ed.), § 1365.

"We cannot hold the introduction of that hearsay narrative to be legal, because such a holding would ignore our Constitution. We have neither the power nor the inclination to pursue any other course than to uphold our fundamental law." 109 Or at 48-9.

*See also State ex rel. Gladden v. Lonergan,* 201 Or 163, 269 P2d 491 (1954); *State v. Partee,* 32 Or App 117, 122, 573 P2d 751, *rev den* 282 Or 385 (1978).

[9] The Georgia statute at issue, Ga Code Ann § 38 - 306 (1954), provided:

"After the fact of conspiracy shall be proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all."

[10] Some federal circuits have adopted the position that a declaration of a co-conspirator admissible under the Federal Evidence Rule, 801(d)(2)(E), *per se* satisfies the requirements of the Confrontation Clause. *See, e.g., United States v. Johnson,* 575 F2d 1347 (5th Cir 1978), *cert den* 440 US 907 (1979); *United States v. Papia,* 560 F2d 827 (7th Cir 1977). Other circuits have adopted a case-by-case

In a recent case not involving the co-conspirator exception, the Supreme Court held challenged hearsay testimony admissible. *Ohio v. Roberts,* 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980). *Roberts* involved the admissibility of former testimony given at a preliminary hearing. The court adopted a two-part test. First, the necessity of the hearsay declaration must be assessed; second, the reliability of the declaration must be assessed. Here, the necessity factor was satisfied. The use of hearsay was unavoidable because of Whitney's intended Fifth Amendment assertion.

Concerning the second factor in *Roberts,* reliability, the court noted that the Confrontation Clause requires that hearsay testimony must be "marked with such trustworthiness that 'there is no material departure from the reason of the general rule.'" 448 US at 65, quoting *Snyder v. Massachusetts,* 291 US 97, 107, 54 S Ct 330, 78 L Ed 674 (1934). It stated that the hearsay must bear adequate "indicia of reliability" but also that:

> "* * * Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." 448 US at 66. (Footnote omitted.)

Here, the second factor of *Roberts* also has been satisfied. We note that the "co-conspirator exception"[11] to the rule against hearsay is firmly established. *See, e.g., State v. Moore,* 32 Or 65, 48 P 468 (1897). Further, there

---

approach to the admissibility of evidence under Rule 801(d)(2)(E). *See, e.g., United States v. Puco,* 476 F2d 1099 (2d Cir), *cert den* 414 US 844 (1973); *United States v. Nick,* 604 F2d 1199 (9th Cir 1979).

[11] Under the Oregon Rules of Evidence and the Federal Rules of Evidence, statements made by a co-conspirator are not an "exception to the rule against hearsay. Rather, the statements are not hearsay.

FRE 801(d)(2)(E) provides in relevant part:

"* * * * *

"(d) Statements which are not hearsay. A statement is not hearsay if —

"* * * * *

"(2) Admission by party-opponent. The statement is offered against a party and is * * * (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

*See* n 6, *supra.*

was additional indicia of reliability. Whitney had personal knowledge of the identity and role of participants in the conspiracy. Whitney was present at the shooting itself and was present during the conversations with defendant. Whitney's declarations to Freer and Fouts were made either immediately or shortly after each conversation with defendant. His declarations made to different persons at different times were consistent. There is no apparent reason for Whitney to lie about his agreement with defendant. Indeed, his statements to Freer and Fouts concerning his involvement in a conspiracy with defendant were plainly against his penal interest.

The statements made by Whitney were not made in a "bargaining process" with the police. The statements made to Fouts in fact were made prior to the killing of Foss. They were not made in an after-the-fact effort to lay blame on another. Additionally, while the credibility of accomplices who testify or provide information to police ought to be viewed with distrust, ORS 17.250(4), the same does not apply to statements made by an accomplice to his friends. Whatever reasons one might have for lying to police or a jury do not apply to the statements made by Whitney.

Unlike in many criminal trials, in the present case defendant took the stand and gave his own version of the affair, including his dealings with Whitney. He denied his involvement in a conspiracy and his alleged conversations with Whitney. The jury apparently chose not to believe him.

In the end, the primary concern of our inquiry must be to determine whether, under the circumstances, the unavailability of Whitney for cross-examination deprived the jury of a satisfactory basis for evaluating the truth of Whitney's declarations. In the present case, we find the challenged testimony possesses sufficient reliability to satisfy constitutional requirements.[12]

---

[12] It should be noted that the trial court carefully instructed the jury concerning the cautions to be observed in considering testimony regarding defendant's declarations. The court instructed the jury:

"Testimony regarding oral statements of the defendant are to be viewed with caution, for the defendant may have been misinformed or may not have clearly expressed the meaning, or the witness may have misunderstood him,

Defendant also assigns as error the denial of his motion for acquittal. Defendant argues that, absent the co-conspiratory hearsay evidence in this case, there was insufficient evidence of guilt to sustain the verdict. We have already found that this evidence was properly admitted. Viewing the evidence in the light most favorable to the state, there was sufficient evidence to convince a rational trier of fact of defendant's guilt beyond a reasonable doubt. *State v. Harris,* 288 Or 703, 609 P2d 798 (1980); *State v. Krummacher,* 269 Or 125, 523 P2d 1009 (1974).

Defendant was sentenced to life imprisonment with a 25-year minimum. We affirm defendant's conviction, but the case must be remanded for resentencing consistent with *State v. Shumway,* 291 Or 153, 630 P2d 796 (1981).

Reconsideration granted; former opinion withdrawn; affirmed and remanded for resentencing.

### VAN HOOMISSEN, J., dissenting.

For the reasons stated in our former opinion, *State v. Farber,* 56 Or App 351, 358-65, 642 P2d 668 (1982), I dissent from that portion of the majority opinion that holds that defendant's constitutional right to confront and cross-examine the witness against him was not violated. I would hold that the trial court committed reversible error when it permitted Freer and Fouts to testify about the hearsay statements of Whitney.

The majority states that the co-conspirator exception to the rule against hearsay is "firmly established." It does so in order to bring ORS 41.900(6) within the language found in *Ohio v. Roberts,* 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), that reliability can be inferred without more in a case where the evidence falls within a "firmly rooted" hearsay exception. 448 US at 66. I take that dictum

or it may be that the witness who testifies to the statements, by intentinally or inadvertently altering a few of the expressions really used, gives an effect to the statement completely at variance with what the defendant actually did say. On the other hand, if you can say from the evidence that the alleged statements were clearly and understandingly made by the defendant, that they are precisely identified, and that the language is correctly remembered and accurately reported by the witness, you are authorized to consider such statements for what you deem them to be worth against the defendant making them. But in reaching such a result you must, for the reasons given, proceed with caution."

to mean hearsay exceptions that are firmly rooted *in reliability.* Contrary to the usual rationale that hearsay exceptions are rooted in reliability, in Oregon the co-conspirator exception is rooted in a theory of mutual agency or partnership. *State v. Yee Guck,* 99 Or 231, 241-42, 195 P 363 (1921); *State v. Ryan,* 47 Or 338, 82 P 703 (1905); *State v. Williams,* 38 Or App 327, 590 P2d 259 (1979); *State v. Davis,* 19 Or App 446, 528 P2d 117 (1974).

According to the state, Whitney was defendant's accomplice to murder. ORS 17.250(4) provides that the testimony of an accomplice ought to be viewed with distrust. Arguably, because under Oregon law, accomplice testimony is suspect and because the oral admissions of a party are to be viewed with caution, nothing short of confrontation (which includes sworn testimony subject to cross-examination and the jury's observation of the witness) with Whitney could satisfy Article I, Section 11 of our state constitution. *See State v. Smyth,* 286 Or 293, 300 n 8, 593 P2d 1166 (1979).