Argued and submitted October 14, reversed and remanded December 14, 1988

# STATE OF OREGON,
*Appellant,*

*v.*

# RENE MENCHACA,
*Respondent.*

## (CRH870709; CA A48465)

766 P2d 395

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

No appearance for respondent.

Before Warden, Presiding Judge, and Graber and Riggs, Judges.

GRABER, J.

**GRABER, J.**

The state appeals from a pretrial order suppressing Intoxilyzer test results. ORS 138.071(1). The trial court held that "OAR 257-30-020[(1)(c)](H) was violated in that the cardboard printout card was not retained as evidence nor presented into evidence; only onion skin copies were available and submitted." The state argues that the test results are admissible, because the "onion skin copies" included the signed original, there can be no genuine dispute as to the content of the documents, and the rule does not require that the test results be suppressed.[1] We reverse.

Defendant was arrested for driving under the influence of intoxicants, ORS 813.010, and assault. ORS 163.160.[2] Trooper Caudell transported defendant to the Umatilla County Jail and administered an Intoxilyzer test. Caudell testified at the suppression hearing that the Intoxilyzer was in working order. The test showed that defendant had a blood-alcohol level of .17 percent.

On the date set for trial, Caudell produced two onion skin paper copies of the form on which the machine had printed the result of defendant's Intoxilyzer test but was unable to account for the cardboard copy of the form. He testified that the machine prints the card and the two onion skins, which are separated by carbon paper, simultaneously and identically, so that the result does not print on the cardboard card if it has not first imprinted the top two onion skins. The top onion skin, which the state offered at defendant's trial, is the form actually signed by the person administering the test. In other words, the results are printed on a three-part form that resembles a three-part credit card charge slip.

Although the cardboard copy is the one that typically is retained and introduced into evidence, neither OAR 257-30-020(1)(c)(H) nor any other authority limits the admissibility of the onion skin copies. OAR 257-30-020(1)(c)(H) directs the operator of the Intoxilyzer to:

"Remove the Evidence Card from the printer slot and

---

[1] Defendant filed no brief on appeal.

[2] The complaint also charged defendant with two counts of harassment. ORS 166.065.

> retain as evidence. Record the test result, indicated opposite the letter 'B' on the Evidence Card, on the Operator's Checklist."

The way in which the rule uses the term "Evidence Card" makes it clear that it includes the entire three-part form. What the operator physically removes from the printer slot is the whole three-part form, not just one portion of it. The loss of one copy is not fatal to the procedure. *See State v. Sweeney,* 88 Or App 358, 361, 745 P2d 439, *rev den* 305 Or 22 (1987).

Further, the copies are otherwise admissible. If the signed, top copy is the original, it is admissible under OEC 1002. If it is considered to be a duplicate copy, then it is admissible under OEC 1003, unless a genuine question exists as to the authenticity of the original or, in the circumstances, it would be unfair to admit the duplicate. Neither exception applies here. There is no genuine dispute as to the content of the document. *See State v. Partee,* 32 Or App 117, 121, 573 P2d 751, *rev den* 282 Or 385 (1978).

Reversed and remanded.